UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| ANDREW BLUM and ZAQ HARRISON, individually and on behalf of all others similarly situated, | : : : |
| | : |
| Plaintiffs, | : |
| v. | : |
| | : |
| MERRILL LYNCH & CO., INC.; MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., and BANK OF AMERICA CORPORATION, | : : : |
| | : |
| Defendants. | : |

Case No. 15 CV 1636 (GBD)(JCF)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION TO DISMISS, STAY OR TRANSFER PLAINTIFFS' COMPLAINT
PURSUANT TO THE "FIRST-FILED" RULE OR, IN THE ALTERNATIVE, TO
DISMISS THE COMPLAINT PURSUANT TO FRCP 12(b)(6)**

Philip A. Goldstein, Esq.
*pagoldstein@mcguirewoods.com*
MCGUIREWOODS LLP
1345 Avenue of the Americas, 7th Floor
New York, New York 10105
(212) 548-2100

Michael D. Mandel, Esq. (admitted *pro hac vice*)
Regina A. Musolino, Esq. (admitted *pro hac vice*)
*mmandel@mcguirewoods.com*
*rmusolino@mcguirewoods.com*
MCGUIREWOODS LLP
1800 Century Park East, 8th Floor
Los Angeles, California 90067
(310) 315-8200

*Attorneys for Defendants*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................. 1

STATEMENT OF FACTS ..................................................................... 2

      A.    Plaintiff's Claims ................................................................. 2

      B.    Plaintiffs' Job Code Classification and Compensation............................ 2

      C.    The Previously-Filed and Pending *Litty* Case............................................. 3

LEGAL ARGUMENT .......................................................................... 5

   I.     PLAINTIFFS' CLAIMS SHOULD BE DISMISSED PURSUANT TO THE "FIRST-FILED" RULE ........................................................... 5

      A.    The First-Filed Rule................................................................. 5

      B.    The First-Filed Rule Applies to This Case ................................. 6

      C.    The First-Filed Rule Warrants Dismissal of This Action .......................... 8

  II.    EVEN IF THE COURT DOES NOT DISMISS THIS CASE PURSUANT TO THE "FIRST-FILED" RULE, PLAINTIFFS' COMPLAINT FAILS TO STATE PLAUSIBLE CLAIMS FOR RELIEF............................................. 11

      A.    Rule 12(b)(6) Standard ........................................................ 11

      B.    The Complaint Affirmatively Alleges Facts Demonstrating That The Outside Sales Exemption Bars Plaintiffs' Overtime Claims ........... 13

            1.    Plaintiffs Allege That Their Primary Duty Was Sales................. 14

            2.    Plaintiffs Allege That They Were Customarily And Regularly Engaged Away From Defendants' Place Of Business In Performing Their "Sales" Work .............................. 15

            3.    Plaintiffs' Conclusory Label That They Engaged In "Inside" Sales and "Customer Service" Must Be Disregarded ................................................................. 16

      C.    Plaintiffs Have Demonstrated That The Administrative Exemption Bars Their Overtime Claims ................................................. 17

            1.    The U.S. Department Of Labor Has Determined That "Financial Advisor" Positions Like Plaintiffs' "Generally Meet" The Administrative Exemption.................................... 17

            2.    Plaintiffs Acknowledge That They Engaged In Administratively Exempt Financial Services Work .................. 18

      D.    Plaintiffs Fail To Plausibly Allege A "Willful" Violation Of The FLSA................................................................................. 20

CONCLUSION.................................................................................. 20

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Archer v. Freedmont Mortgage Corp.*,
   No. 12-cv-1099, 2012 WL 5193828 (D. Md. Oct. 18, 2012) .................................................13

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (2009) ...........................................................................................................12, 16

*Bell Atl. Corp. v. Twombly*,
   127 S. Ct. 1955 (2007) ...........................................................................................................12, 20

*Castillo v. Taco Bell of Am., LLC*,
   960 F. Supp. 2d 401 (E.D.N.Y. 2013) .......................................................................................6, 7

*Christopher v. SmithKline Beecham Corp.*,
   132 S. Ct. 2156 (2012) ..................................................................................................................13

*Curtis v. Citibank, N.A.*,
   226 F.3d 133 (2d Cir. 2000) ........................................................................................................6, 8

*DiFolco v. MSNBC Cable L.L.C.*,
   622 F.3d 104 (2d Cir. 2010) ..........................................................................................................11

*Employers Ins. of Wausau v. Fox Entm't Grp., Inc.*,
   522 F.3d 271 (2d Cir. 2008) ........................................................................................................5, 9

*First City Nat'l Bank & Trust Co. v. Simmons*,
   878 F.2d 76 (2d Cir.1989) ...........................................................................................................5, 9

*Fisher v. Rite Aid Corp.*,
   2010 U.S. Dist. LEXIS 56383 (D. Md. June 8, 2010) ..................................................................7

*GT Plus, Ltd. v. Ja-Ru, Inc.*,
   41 F. Supp. 2d 421 (S.D.N.Y. 1998) ...........................................................................................10

*Hantz v. Prospect Mortgage, LLC*,
   11 F. Supp. 3d 612 .........................................................................................................14, 15, 16

*Hein v. PNC Fin. Servs. Group, Inc.*,
   511 F. Supp. 2d 563 (E.D. Pa. 2007) ...............................................................................17, 18, 19

*Krulisky v. Bristol-Myers Squibb Co.*,
   No. 10 CIV. 8700 DLC, 2011 WL 2555963 (S.D.N.Y. June 27, 2011) ......................................10

*L-7 Designs, Inc. v. Old Navy, LLC*,
   647 F.3d 419 (2d Cir. 2011) ..........................................................................................................13

*Oleg Cassini, Inc. v. Serta, Inc.*,
    No. 11-cv-8751, 2012 WL 844284 (S.D.N.Y. Mar. 13, 2012)........................................5, 6, 8

*Pani v. Empire Blue Cross Blue Shield*,
    152 F.3d 67 (2d Cir. 1998)....................................................................................12, 16

*Rothman v. Gregor*,
    220 F.3d 81 (2d Cir. 2000)............................................................................................19

*Siegfried v. Takeda Pharm. N. Am., Inc.*,
    No. 10-cv-02713, 2011 WL 1430333 (N.D. Ohio Apr. 14, 2011) ...................................8

*Steavens v. Elec. Data Sys. Corp.*,
    No. 07-cv-14536, 2008 WL 5062847 (E.D. Mich. Nov. 25, 2008)..................................8

*Tate-Small v. Saks Inc.*,
    No. 12-cv-1008, 2012 WL 1957709 (S.D.N.Y. May 31, 2012) ...............................6, 7, 8

*Taylor v. Waddell & Reed, Inc.*,
    2012 U.S. Dist. LEXIS 212 (S.D. Cal. Jan. 3, 2012)...................................14, 15, 16

*Thomas v. Apple-Metro, Inc.*,
    No. 14-cv-4120, 2015 WL 505384 (S.D.N.Y. Feb. 5, 2015) ..............................5, 6

*Walker v. Progressive Cas. Ins. Co.*,
    No. 03-cv-656, 2003 WL 21056704 (W.D. Wash. May 9, 2003) .....................................8

Warrick v. Gen. Elec. Co.,
    70 F.3d 736 (2d Cir. 1995)............................................................................................10

*Wyler-Wittenberg v. MetLife Home Loans, Inc.*,
    899 F. Supp. 2d 235 (E.D.N.Y. 2012) .......................................................................8, 11

**STATUTES**

28 U.S.C. § 1404(a) ...........................................................................................................9

29 U.S.C. § 203(k) ..........................................................................................................14

29 U.S.C. § 213(a)(1).......................................................................................................13

29 U.S.C. § 255(a) ...........................................................................................................20

Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*.........................................................1

Md. Code Ann. Labor & Employment §3-403(4) ...........................................................13

**RULES**

Fed R. Civ. P. 8(a)(2) .................................................................................................11

Fed. R. Civ. P. 12(b)(6) .......................................................................................11, 12, 16

Fed. R. Civ. P. 23 .................................................................................................3

FINRA Rule 2111(a) .................................................................................................18

**REGULATIONS**

29 C.F.R. § 500(a) .................................................................................................16

29 C.F.R. § 541.200(a)(2) and (3) .................................................................................17

29 C.F.R. § 541.203(b) .......................................................................................17, 19

29 C.F.R. § 541.500(a) .................................................................................................13

29 C.F.R. § 541.500(b) .................................................................................................14

29 C.F.R. § 541.700(a) .................................................................................................14

29 C.F.R. § 541.701 .......................................................................................15, 16

**OTHER AUTHORITIES**

Charles Alan Wright & Arthur R. Miller, 5B Federal Practice and Procedure § 1357, at
     708-13 (3d ed. 2004) .................................................................................................12

FLSA 2007-2, DOL Opinion Letter from Paul DeCamp .................................................14, 15

DOL Opinion Letter FLSA2006-43, Nov. 27, 2006 .................................................17, 18, 19

## PRELIMINARY STATEMENT

Plaintiffs Andrew Blum and Zaq Harrison, both former Financial Advisor Trainees ("FA Trainees") for Merrill Lynch, Pierce, Fenner & Smith, Inc. ("Merrill Lynch")[1] bring this putative collective action under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*., and a putative class action under two related Maryland wage and hour statutes.  Plaintiffs allege that Merrill Lynch misclassified all FA Trainees nationwide as exempt from overtime during one stage in their training program, the so-called "Development Stage."  As detailed more fully below, Plaintiffs' Complaint should be dismissed on two independent grounds.

First, the first-filed rule warrants dismissal of this action.  Plaintiffs' claims are completely subsumed by *Litty v. Merrill Lynch & Co., Inc.*, Case No. 14-CV-425-PA-PJW (C.D. Cal.) ("*Litty*"), a nearly-identical putative collective and class action that has been pending in the United States District Court for the Central District of California for over a year.  *Litty* alleges the same overtime misclassification claims Plaintiffs present here, encompasses all FA Trainees nationwide including those in the Development Stage, and covers the same time period as the present action.  Indeed, both Plaintiffs Blum and Harrison are members of the putative collective in *Litty*.  As if there were any doubt about the overlap between *Litty* and this action, the Plaintiffs herein recently have sought to intervene in *Litty*.  This case presents precisely the scenario that implicates the first-filed rule and the strong presumption that a substantially similar later-filed lawsuit should be dismissed in favor of the first-filed lawsuit.  Accordingly, the present action should be dismissed in favor of *Litty*, or, in the alternative, transferred to the Litty court or stayed pending the final outcome of *Litty*.

---

[1] Plaintiffs also name Merrill Lynch & Co., Inc. and Bank of America Corporation as Defendants.  Neither Plaintiffs Blum or Harrison or any member of the putative class they seek to represent was employed by either of those entities during any time relevant to this lawsuit.

Second, Plaintiffs' Complaint should still be dismissed for the separate and independent reason that Plaintiffs Blum and Harrison have pleaded themselves out of this court.  Plaintiffs have pleaded facts and otherwise placed into the record evidence that affirmatively establishes that they were exempt from overtime under the outside salesperson and/or administrative exemptions.  Thus, Plaintiffs have conclusively shown they cannot state a plausible claim upon which relief can be granted and, on this alternative basis, their Complaint should be dismissed with prejudice.

## STATEMENT OF FACTS

### A.   Plaintiff's Claims.

Plaintiffs are former Financial Advisor Trainees ("FA Trainees") of Merrill Lynch who participated in Merrill Lynch's Practice Management Development ("PMD") Program.  *See* Goldstein Aff. Exh. A (Complaint ("Compl.") at ¶1).   The PMD Program is a multi-stage training program.  Plaintiffs' claims are limited to time spent in one particular stage of Merrill Lynch's PMD Program, the Development Stage of that training program.   (Compl., ¶1). Plaintiffs allege that they were misclassified as exempt from overtime during the Development Stage which covers the first 90 days after they pass licensing exams issued by the Financial Industry Regulatory Authority ("FINRA") and become exempt.   Plaintiffs both assert an overtime claim under the Fair Labor Standards Act ("FLSA") (Count I), and Plaintiff Harrison asserts a substantively identical claim under Maryland state law (Count II).  *See generally id.*

### B.   Plaintiffs' Job Code Classification and Compensation.

FA Trainees in the Development Stage of Merrill Lynch's PMD Program are assigned Job Code BK025 ("PMD/Financial Advisor") within Merrill Lynch's job code classification system.  Accordingly, Plaintiffs Blum and Harrison were both assigned Merrill Lynch Job Code

BK025 during the time they were employed in the Development Stage of Merrill Lynch's PMD Program.  *See* Declaration of Joseph Bush, ¶¶ 3, 4.

Plaintiffs allege that they were paid "on a salary basis."  (Compl., ¶1).  In addition to being paid a salary, Plaintiffs – and other FA Trainees – in the Development Stage of Merrill Lynch's PMD Program are eligible to receive commissions in the form of "incentive compensation" if they meet certain benchmarks.  *See, e.g.*, Declaration of Justin M. Swartz, Dkt. No. 5-3, at p. 5, 10-15.

C.     **The Previously-Filed and Pending *Litty* Case.**

In January 2014, Christopher Litty, a former Merrill Lynch Financial Advisor Trainee and Financial Advisor ("FA"), filed a putative nationwide collective action against Defendants here:  *Litty v. Merrill Lynch & Co., Inc.*, C.D. Cal. Case No. 14-cv-0425-PA-PJW ("*Litty*").[2] Plaintiff Litty seeks to represent an FLSA collective on behalf of FA Trainees as well as FAs.[3] The *Litty* case is substantively identical to this case.

*First*, the *Litty* case asserts the same FLSA overtime claim that Plaintiffs assert here, premised on the alleged misclassification of FA Trainees and FAs as exempt from overtime.  *See* Goldstein Aff. Exh. B at ¶¶ 5(a), 6(a), 7, 49, and First Claim for Relief; Goldstein Aff. Exh. C at ¶¶ 4(a), 5(a) 6, 51, and First Claim for Relief; and Goldstein Aff. Exh. D at ¶¶ 4(a), 5(a), 6, 51 and First Claim for Relief.

*Second*, the *Litty* putative collective subsumes the putative collective and Maryland class here.  As stated above, Plaintiffs here allege that they were FA Trainees paid on a "salary basis." (Compl., ¶ 1).  The *Litty* putative collective specifically includes all FA Trainees paid on a

---

[2]     The Initial *Litty* Complaint is attached to the Goldstein Affirmation as Exhibit B.  The First Amended Complaint in *Litty* ("*Litty* FAC") is attached to the Goldstein Affirmation as Exhibit C.  The operative Second Amended Complaint in *Litty* ("*Litty* SAC," *Litty* ECF 19) is attached to the Goldstein Affirmation as Exhibit D.

[3]     Litty also seeks to represent a Fed. R. Civ. P. 23 class consisting of California-based FAs.

"salary basis". *See* Goldstein Aff. Exh. B at ¶ 5 ("The persons Plaintiffs seeks to represent are: current and former ... Financial Advisor Trainees ... employed by Defendants on a commission *or salary basis*") (emphasis added); Goldstein Aff. Exh. B at ¶ 49 ("Members of the Federal Collective Group ... who were 'financial advisor trainees' *received a fixed salary*") (emphasis added); Goldstein Aff. Exh. C at ¶ 51 ("Members of the Federal Collective ... who were 'financial advisor trainees' *received a fixed salary*") (emphasis added); Goldstein Aff. Exh. D at ¶ 51 ("Members of the Federal Collective Group ... who were 'financial advisor trainees' *received a fixed salary*") (emphasis added).

*Third*, the time period of the *Litty* case subsumes the limitations period of this case. On February 23, 2015, the *Litty* parties reached a collective-wide settlement, and on March 10, 2015, filed a Joint Motion for Preliminary Approval of Settlement. *See* Goldstein Aff. Exhs. E, F, and G.[4] The proposed collective period in the *Litty* settlement runs from January 17, 2011 through the present. *See* Goldstein Aff. Exh. G at ¶3-4. The limitations period in this case, filed in 2015, falls entirely within the *Litty* settlement period.

*Fourth*, the *Litty* settlement agreement and proposed notices to the collective members specify that the *Litty* settlement covers FA Trainees assigned Merrill Lynch Job Code BK025. *See* Goldstein Aff. Exhs. G at ¶ 3, and Exhs. H and I. Plaintiffs Blum and Harrison were assigned Merrill Lynch Job Code BK025 during the time they worked as FA Trainees in the Development Stage of Merrill Lynch's PMD Program. *See* Declaration of Joseph Bush, ¶¶ 3, 4. Accordingly, upon approval of the *Litty* settlement Plaintiffs Blum and Harrison – as well as the collective group that they seek to represent in this lawsuit – will each receive notice of the settlement. *See* Goldstein Aff. Exh. H at p. 55 and Exh. I at p. 72 (notifying collective members

---

[4] A copy of the Docket Sheet from the *Litty* matter is attached to the Goldstein Affirmation as Exhibit E.

that they are receiving notice of the settlement because they were "employed by Merrill Lynch ... as a Financial Advisor Trainee (Job Code[] ... BK025)").

Perhaps most telling that *Litty* encompasses this case is that Plaintiffs Blum and Harrison filed a Motion to Intervene in *Litty on* March 27, 2015. *See* Goldstein Aff. Exhs. E and J. Plaintiffs **admit** in their motion that they are members of the proposed collective in *Litty*. *See* Goldstein Aff. Exh J. at p. 16. Plaintiff's Motion attempts to argue that *Litty* only subsumed Development Stage Trainees at the settlement stage. *See id.* at p. 9-10. But even assuming this is relevant to this motion, it is nevertheless false. All FA Trainees (from the point in time at which they became exempt from overtime), including Plaintiffs Blum and Harrison, were included in *Litty's* initial Complaint and have remained putative class members throughout the *Litty* litigation, up through and including settlement.

## LEGAL ARGUMENT

### I.    PLAINTIFFS' CLAIMS SHOULD BE DISMISSED PURSUANT TO THE "FIRST-FILED" RULE

#### A.    The First-Filed Rule.

The "first-filed" rule stands for the general proposition that "where there are two competing lawsuits, the first suit should have priority." *Employers Ins. of Wausau v. Fox Entm't Grp., Inc.*, 522 F.3d 271, 274 (2d Cir. 2008) (quoting *First City Nat'l Bank & Trust Co. v. Simmons,* 878 F.2d 76, 79 (2d Cir.1989)). Accordingly, the rule grants a district court broad discretion to dismiss a lawsuit that is duplicative of a prior action. *See First City Nat. Bank & Trust Co. v. Simmons*, 878 F.2d 76, 80 (2d Cir. 1989) ("dismissal of the [subsequent action] pending a final determination [of the prior action] seems to be the least abrasive method of judicial administration here."); *Thomas v. Apple-Metro, Inc.*, No. 14-cv-4120, 2015 WL 505384, at \*2 (S.D.N.Y. Feb. 5, 2015); *Oleg Cassini, Inc. v. Serta, Inc.*, No. 11-cv-8751, 2012 WL

844284, at *3 (S.D.N.Y. Mar. 13, 2012); *Castillo v. Taco Bell of Am., LLC*, 960 F. Supp. 2d 401, 404 (E.D.N.Y. 2013). This discretion arises from a court's power to conserve judicial resources, promote the efficient and comprehensive disposition of cases, and to avoid burdening a party with litigating the similar matters in separate lawsuits. *See Castillo*, 960 F. Supp. 2d at 404; *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000).

The first-filed rule applies to cases with substantially similar parties and claims. *See Tate-Small v. Saks Inc.*, No. 12-cv-1008, 2012 WL 1957709, at *2 (S.D.N.Y. May 31, 2012) ("The first-filed rule. . . 'applies when identical or substantially similar parties and claims are present in both courts.'") (collecting cases). The cases need not be identical. *See Thomas*, 2015 WL 505384, at *3 (". . . courts in this Circuit frequently apply the first-filed rule to cases that are similar, not identical.") (collecting cases). Rather, there must simply be overlap among the parties and the parties must represent the same interests. *See Thomas*, 2015 WL 505384, at *3; *Tate-Small*, 2012 WL 1957709, at *2-4; *Oleg Cassini, Inc.*, 2012 WL 844284, at *3 (for the first-filed rule to apply, "the issues need not be identical, and the named parties need not be entirely the same provided that they represent the same interests.").

The first-filed rule is particularly appropriate in wage and hour collective actions such as this case. *See Tate-Small*, 2012 WL 1957709, at *2 (citing *Ortiz v. Panera Bread Co.*, No. 1:10CV1424, 2011 WL 3353432, at *2 (E.D. Va. Aug. 2, 2011) (collecting cases)). This is because the rule prevents subsequent class or collective actions "which threaten to present overlapping classes, multiple attempts at certification in two different courts, and complicated settlement negotiations." *Id.*; *Thomas*, 2015 WL 505384, at *4 (same).

### B.   The First-Filed Rule Applies to This Case.

There is obviously no dispute that the *Litty* case was filed well before this case. Since the *Litty* matter was filed in January 2014, the parties have conducted discovery, litigated class and

collective certification, and ultimately negotiated a settlement.  On March 10, 2015, the parties in *Litty* moved for preliminary approval of the settlement, with a hearing set for April 13, 2015. *See* Goldstein Aff. Exhs. E and F.

Likewise, there is no dispute that the overtime misclassification claim asserted in this case is substantially similar to the overtime misclassification claim asserted in *Litty*.  Both allege that Merrill Lynch misclassified FA Trainees as exempt from overtime under the FLSA and pertinent state laws.  Courts regularly apply the first-filed rule to cases involving state law wage and hour claims, particularly where a court's disposition of a plaintiff's FLSA claim will also dispose of the plaintiff's associated state law claims. *See, e.g.*, *Tate-Small*, 2012 WL 1957709, at *3 (S.D.N.Y. May 31, 2012) (New York minimum wage claim did not preclude application of first-filed rule where court would apply substantially the same analysis to state claims as FLSA claims); *Castillo*, 960 F. Supp. 2d at 404 (E.D.N.Y. 2013) (FLSA and Colorado wage claims were substantially similar to FLSA and New York Wage claims to warrant application of the first-filed rule).  Indeed, as the District of Maryland noted in applying the first-filed rule to dismiss Maryland Wage and Hour Law ("MWHL") claims like those asserted by Plaintiff Harrison here, the first-filed rule "is especially applicable" to an MWHL overtime claim because an MWHL claim "stands or falls on the success of [Plaintiffs'] claim under the FLSA." *Fisher v. Rite Aid Corp.*, 2010 U.S. Dist. LEXIS 56383, at *9-10 (D. Md. June 8, 2010) (the first-filed rule was "especially applicable in the instant matter, because the MWHL incorporates by reference the FLSA's 'white collar exemptions' from overtime wage requirements").

Finally, there is no dispute that the parties in this case are substantially similar to the parties in *Litty*.  As explained above, Plaintiffs here are both putative collective members in *Litty* and will receive notice of that settlement upon approval.  Simply stated, the *Litty* collective

completely subsumes the putative collective and putative Maryland class here. *See Tate-Small*, 2012 WL 1957709, at *2 (first-filed rule applies when both actions "seek to represent at least some of the same individuals"); *Siegfried v. Takeda Pharm. N. Am., Inc.*, No. 10-cv-02713, 2011 WL 1430333, at *5 (N.D. Ohio Apr. 14, 2011) ("[T]he Plaintiffs in the instant action, all Personal Sales Representatives . . . make up part of the class designated in the [first case] . . . Although not identical, the parties involved in the [first case] represent a larger collection of both plaintiffs and defendants broad enough to cover the parties involved in the instant action and are therefore similar for purposes of the first-to-file rule."); *Steavens v. Elec. Data Sys. Corp.*, No. 07-cv-14536, 2008 WL 5062847, at *1 (E.D. Mich. Nov. 25, 2008) (parties were substantial similar where the first suit's putative class subsumed the second putative class, "which only includes a subcategory of [the employees at issue]."); *Walker v. Progressive Cas. Ins. Co.*, No. 03-cv-656, 2003 WL 21056704, at *2 (W.D. Wash. May 9, 2003) (first-filed rule applies where "there is clearly substantial overlap between the parties in the two actions."); *see also Wyler-Wittenberg v. MetLife Home Loans, Inc.*, 899 F. Supp. 2d 235, 244 (E.D.N.Y. 2012) (applying the first-filed doctrine where ". . . the named plaintiffs in each of these cases contemplated a nationwide collective class—thereby encompassing all other loan officers working for defendants").

### C.  The First-Filed Rule Warrants Dismissal of This Action.

Where, as here, the first-filed rule applies, "there is a strong presumption that a later lawsuit should be dismissed in favor of the first-filed lawsuit." *Oleg Cassini, Inc.*, 2012 WL 844284, at *3. This presumption exists to foster judicial economy, ensure fairness, and allow the comprehensive disposition of cases. *See Curtis*, 226 F.3d at 138 ("The power to dismiss a duplicative lawsuit is meant to foster judicial economy and the 'comprehensive disposition of litigation.' The doctrine is also meant to protect parties from 'the vexation of concurrent

litigation over the same subject matter.") (internal citation omitted).  There are two potential exceptions to the dismissal, but neither applies here.

The first potential exception to the first-filed rule involves cases that have "special circumstances" that that might overcome the first-filed rule, such as "manipulative or deceptive behavior" or forum shopping in the choice of the first lawsuit.  *Employers Ins. of Wassau*, 522 F.3d at 275-76.  Neither circumstance exists here, as the two lawsuits were filed by two different plaintiffs' firms.[5]

*Second*, in some cases the "balance of convenience" might overcome the first-filed dismissal presumption.  *Id*. at 275.  The "balance of convenience" factors are "essentially the same" as those considered under 28 U.S.C. § 1404(a): "(1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of the parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, (7) the relative means of the parties."  *Id*.

These factors must be viewed through the prism of five material facts.  *First*, as explained above, the *Litty* case has progressed substantially and is on the eve of a collective-wide settlement.  *Second*, neither Plaintiff lives in this District, nor worked for Merrill Lynch in this District:  Blum worked for Merrill Lynch in Florida, while Harrison worked for Merrill Lynch in Maryland.  *Third*, as explained above, Defendants have litigated and defended themselves against a substantively identical case in California.  *Fourth*, Plaintiffs are represented by one of

---

[5]      If anything, Plaintiffs herein have engaged in forum shopping: Plaintiff Blum lives in and worked in Florida and asserts only claims under federal law; Plaintiff Harrison lives in and worked in Maryland and asserts claims under federal law and Maryland state law.  There is no compelling reason for this case to have been filed in this Court, other than a perceived favorable forum.

the largest national employment and wage and hour class action firms in the country.  Plaintiffs' firm has offices in New York, Chicago, and California, deep pockets, and an extensive history of filing wage and hour class action cases against Defendants.[6]  *Fifth*, Plaintiffs actually have sought to join the *Litty* action as interveners, filing a motion to intervene and a proposed complaint in intervention with the *Litty* court on March 27, 2015. *See* Goldstein Aff. Exhs. E and J. Against this backdrop, the "convenience" factors do not overcome the presumption of dismissal.

Plaintiffs' choice of forum does not weigh against dismissal here because "[t]he weight normally accorded to the plaintiff's choice of forum is diminished substantially where plaintiff has chosen a forum which is neither his home nor the place where the cause of action arose." *GT Plus, Ltd. v. Ja-Ru, Inc.*, 41 F. Supp. 2d 421, 425 (S.D.N.Y. 1998) (citation omitted).  This is particularly so in collective actions such as this case.  *See Warrick v. Gen. Elec. Co.*, 70 F.3d 736, 741 n.7 (2d Cir. 1995) ("plaintiff's choice of forum is a less significant consideration in a (here, putative) class action than in an individual action"); *Krulisky v. Bristol-Myers Squibb Co.*, No. 10 CIV. 8700 DLC, 2011 WL 2555963, at *2 (S.D.N.Y. June 27, 2011) (applying *Warrick* to a FLSA collective action).

Moreover, Plaintiffs' choice of forum is overshadowed by several other factors: convenience of the witnesses, convenience of the parties, and locus of operative facts.  The parties and key witnesses reside in Florida and Maryland (Plaintiffs, their managers, and the co-workers they claim are similarly situated to them based on seeing them work).  Other witnesses

---

[6]      Just one week ago Plaintiffs' law firm, including Plaintiffs' counsel in this case, filed another putative collective and class action against Defendants on behalf of FA Trainees in the first stage of the PMD Program in the Central District of California, where *Litty* is being litigated.  *See Orozco v. Merrill Lynch, Pierce, Fenner & Smith, Inc. et al.*, C.D. Cal. Case No. 2:15cv2213 (filed March 25, 2015).

are spread across the country in this nationwide putative collective action.  These factors cannot overcome the presumption against dismissal.

The location of relevant documents and ease of access to proof does not overcome the dismissal presumption either, because documents and evidence is largely electronic.  The federal rules provide the process necessary to compel the attendance of witnesses nationwide.  And the relative means of the parties – particularly Plaintiffs' class action counsel – does not favor maintaining this case in New York.

In sum, none of the relevant "convenience" factors weigh in Plaintiffs' favor or overcome the dismissal presumption.  The first-filed presumption should therefore be applied and this case should be dismissed.[7]

## II.    EVEN IF THE COURT DOES NOT DISMISS THIS CASE PURSUANT TO THE "FIRST-FILED" RULE, PLAINTIFFS' COMPLAINT FAILS TO STATE PLAUSIBLE CLAIMS FOR RELIEF.

Alternatively, even if the *Litty* case did not exist, Plaintiffs' Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).  Plaintiffs' claims are subject to two overtime exemptions that are apparent from Plaintiffs' pleadings.  Plaintiffs' claims should therefore be dismissed with prejudice.

### A.    Rule 12(b)(6) Standard.

Fed R. Civ. P. 8(a)(2) requires "a short and plain statement of the claim *showing* that the pleader is entitled to relief."  (emphasis added).  Accordingly, to survive a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, '*to state a claim to relief that is plausible on its face*.'"  *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (emphasis added).  "[A] [p]laintiff's obligation to

---

[7]    In the alternative, this case may be stayed pending the final adjudication of *Litty*, or transferred to the Central District of California.  *See Wyler-Wittenberg*, 899 F. Supp. 2d at 247-48.

provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007).

Under this "plausibility" standard, "conclusory statements" and "legal conclusions" are not entitled to a presumption of proof or given any weight. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("The tenet that a court must accept as true all the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of elements of a cause of action, supported by merely conclusory statements, do not suffice."). Thus, in testing the sufficiency of a complaint, the Court should first identify those allegations that are nothing more than legal conclusions which may be disregarded because "they are not entitled to the assumption of truth." *Id.* at 1950.  Then, the Court should determine whether the remaining factual allegations support a "*plausible claim for relief*." *Id.* (emphasis added).

Plaintiffs fail to plead a "plausible claim for relief" where, as here, after setting aside conclusory allegations, they fail to plead factual content inferring that a defendant is liable for the misconduct alleged. *Id.*  Moreover, claims are not plausible when their allegations assert facts that, when taken as true, establish an affirmative defense. *See Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998) ("An affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint").  Stated differently, a plaintiff pleads himself out of court when his "own allegations show that a defense exists that legally defeats the claim for relief."  Charles Alan Wright & Arthur R. Miller, 5B Federal Practice and Procedure § 1357, at 708-13 (3d ed. 2004).

Finally, "determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011) (citations omitted).   "Plausibility thus depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *Id*. (citing *Iqbal*, 129 S.Ct. at 1947-52).

**B.      The Complaint Affirmatively Alleges Facts Demonstrating That The Outside Sales Exemption Bars Plaintiffs' Overtime Claims.**

An "outside salesman" is exempted from the FLSA's and MWHL's overtime requirements.  *See* 29 U.S.C. § 213(a)(1); Md. Code Ann. Labor & Employment §3-403(4).[8] "Congress did not define the term 'outside salesman,' but it delegated authority to the DOL to issue regulations 'from time to time' to 'defin[e] and delimi[t]' the term." *Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2162 (2012)   The DOL's regulations define "outside salesman" as an employee:

> (1) Whose <u>primary duty</u> is (i) <u>making sales</u> ... and (2) who is <u>customarily and regularly</u> engaged <u>away</u> from the employer's <u>place or places of business</u> in performing such primary duty."

29 C.F.R. § 541.500(a) (emphasis added).   Application of DOL regulations defining the key highlighted terms to Plaintiffs' allegations demonstrates that Plaintiffs have pled themselves into the outside salesman exemption and, thus, out of a plausible overtime claim.

---

[8]      The MWHL's outside sales exemption mirrors the federal exemption, so the same analysis applies to both statutes.   *See Archer v. Freedmont Mortgage Corp.*, No. 12-cv-1099, 2012 WL 5193828, at *1 (D. Md. Oct. 18, 2012) (applying the same analysis to both the federal and Maryland outside sales exemption because "[t]he requirements under the MWHL mirror those of the federal law; as such, Plaintiffs' claims under the MWHL stand or fall on the success of their claims under the FLSA.").

1.     **Plaintiffs Allege That Their Primary Duty Was Sales.**

The DOL regulations define "primary duty" as "the principal, main, major, or most important duty that the employer performs."  29 C.F.R. § 541.700(a).  Plaintiffs allege that as Development Stage Trainees they were "expected to engage *primarily* in lead generation activities ..."  (Compl., ¶ 67) (emphasis added).  Plaintiffs explain that these "lead generation activities" included "identifying potential clients, qualifying potential clients, calling potential clients, and conducting appointments with potential clients to encourage them to do business with Defendants." *Id.*  Plaintiffs also allege that that they "regularly" attended "client prospecting functions" and "client prospecting events."  *Id.* at ¶¶ 26, 29, 39, 75.

Taking these allegations as true, as the Court and Defendants must at this juncture, Plaintiffs plainly have alleged that their "primary duty" was "making sales."  29 U.S.C. § 203(k) ("'Sale' or 'sell' includes any sale, exchange, contract to sell ... or other disposition"); 29 C.F.R. § 541.500(b) (exempt sales work includes "work performed incidental to and in conjunction with the employee's own outside sales or solicitations" and "other work that further the employee's sales efforts").  *See also, e.g.,* FLSA 2007-2, DOL Opinion Letter from Paul DeCamp, Administrator, at 1, 2, 3-4 (Jan. 25, 2007) ("meeting with prospects" and "prospecting customers" is exempt sales work); *Hantz v. Prospect Mortgage, LLC*, 11 F. Supp. 3d 612, 620 (E.D. Va. 2014) ("network[ing] with potential customers" constitutes "sales related activities"); *Taylor v. Waddell & Reed, Inc.*, 2012 U.S. Dist. LEXIS 212, at *12 (S.D. Cal. Jan. 3, 2012) (financial advisor's activities of "meeting with business professionals" and "hosting gatherings" to "develop customers to generate sales" is exempt sales work).

>   **2.     Plaintiffs Allege That They Were Customarily And Regularly Engaged Away From Defendants' Place Of Business In Performing Their "Sales" Work.**

The DOL regulations define "customarily and regularly" to mean "a frequency that must be greater than occasional but which may be less than constant."  29 C.F.R. § 541.701.  In other words, "the phrase 'customarily and regularly' is not a 'majority of the time test.'"  *Hantz*, 11 F. Supp. 2d at 620 (citation omitted); *Taylor*, 2012 U.S. Dist. LEXIS 212, at *11 (same).  The DOL has confirmed in an Opinion Letter that selling or sales related work outside of the office "**one or two hours a day, one or two times a week**" satisfies the "customarily and regularly" requirement.  FLSA 2007-2, DOL Opinion Letter from Paul DeCamp, Administrator, at 3-4 (Jan. 25, 2007) (emphasis added).  Accordingly, "the pertinent inquiry is whether the employee performs tasks critical to the sales process away from the office on a greater than occasional basis."  *Hantz*, 11 F. Supp. 3d at 620.

Here, Plaintiffs ***specifically allege*** that they were "regularly required" to perform sales work outside of the office.  (Compl., ¶ 75).  Specifically:

- Plaintiff Blum "attended client prospecting functions in the evening approximately **two to three times per week**, which lasted for approximately two to four hours per function," (Compl., ¶ 26) (emphasis added);

- Plaintiff Blum "also attended client prospecting functions ... **once per weekend** ... which lasted between approximately two and eight hours," (Compl., ¶ 26) (emphasis added);

- Plaintiff Harrison "on average, approximately **one to two times per week** ... attended client prospecting functions" for approximately three hours each time per week, (Compl., ¶ 39) (emphasis added); and

15

- Both Plaintiffs were "**regularly** required ... to ... attend client prospecting events

   ... beyond their regular schedules ..." (Compl., ¶ 75) (emphasis added).

Accepting these allegations as true, the only plausible conclusion that can be reached from Plaintiffs' allegations is that they "customarily and regularly" engaged in sales activities outside of the office.  29 C.F.R. § 541.701; DOL Opinion Letter FLSA 2007-2; *Hantz*, 11 F. Supp. 2d at 620-21; *Taylor*, 2012 U.S. Dist. LEXIS 212, at *11-16.  Accordingly, Plaintiffs have failed to state a plausible claim for relief, and their claims must be dismissed with prejudice.

### 3.   Plaintiffs' Conclusory Label That They Engaged In "Inside" Sales and "Customer Service" Must Be Disregarded.

Plaintiffs attempt to plead around the outside sales exemption by alleging that their "primary duties ... included *inside* sales and *customer service*."  *See* Compl., ¶¶ 21, 34, 54, 66 (emphasis added).  However, Plaintiffs do not support these conclusory labels with any specific facts, or indeed any facts at all.  These sound bites are precisely the type of "naked assertions" and "labels and conclusions" that "are not entitled to the assumption of truth" that must be disregarded in the Rule 12(b)(6) analysis.  *Iqbal*, 556 U.S. at 678-679.  To the contrary, as described above, the specific facts that Plaintiffs have alleged plainly establish that they "customarily and regularly" performed their "sales" duties *outside* of the office.

In sum, Plaintiffs specifically allege facts that, taken as true, demonstrate that (1) their primary duty was making sales, and (2) they were customarily and regularly engaged in sales work outside of their offices.  Plaintiffs' own allegations therefore demonstrate they were outside salespersons exempt from overtime under both the FLSA and Maryland law.  29 C.F.R. § 500(a). Plaintiffs therefore fail to state plausible claims for overtime under the FLSA or Maryland state law, and their Complaint should be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6). *See Pani*, 152 F.3d at 74.

**C.    Plaintiffs Have Demonstrated That The Administrative Exemption
          Bars Their Overtime Claims.**

In addition, or in the alternative, to the outside salesperson exemption, Plaintiffs also

have alleged facts that establish that they qualify for the administrative exemption, which bars

their claims for relief.

**1.    The U.S. Department Of Labor Has Determined That
              "Financial Advisor" Positions Like Plaintiffs' "Generally
              Meet" The Administrative Exemption.**

Generally speaking, the administrative exemption to overtime under the FLSA covers

white-collar employees whose primary duty "is the performance of office or non-manual work

directly related to the management or general business operations of the employer or the

employer's customers" and "includes the exercise of discretion and independent judgment with

respect to matters of significance."  29 C.F.R. § 541.200(a)(2) and (3).  The U.S. Department of

Labor has specifically determined that "[e]mployees in the financial services industry generally

_**meet**_ the duties requirements for the administrative exemption" when:

> their duties include work such as collecting and analyzing information regarding
> the customer's income, assets, investments or debts; determining which financial
> products best meet the customer's needs and financial circumstances; advising the
> customer regarding the advantages and disadvantages of different financial
> products; and marketing, servicing or promoting the employer's  financial
> products….

29 C.F.R. § 541.203(b) (emphasis added).  _Accord_ DOL Opinion Letter FLSA2006-43, Nov. 27,

2006) ("registered representatives" fall within the administrative exemption); _Hein v. PNC Fin._

_Servs. Group, Inc._, 511 F. Supp. 2d 563, 565 (E.D. Pa. 2007) ("highly paid, highly trained

investment advisors engaged in sophisticated sales work … are not entitled to overtime pay

under the FLSA").

The conclusion that financial advisors like Plaintiffs fall within the administrative

exemption is based on the fact that financial advisors such and Blum and Harrison "must be

registered with a self-regulatory organization such as the New York Stock Exchange (NYSE) or [FINRA]." DOL Opinion Letter FLSA2006-43, p. 1.[9]  FINRA rules and regulations "***require***" registered representatives like Plaintiffs to "conduct diligence into each individual client's financial situation in order to recommend only those securities that are suitable for the client's particular financial status, objectives, risk tolerance, tax exposure, and the like." DOL Opinion Letter FLSA2006-43, p. 1 (emphasis added). *See also* FINRA Rule 2111(a) (requiring brokers to "have a reasonable basis to believe that a recommended transaction or investment strategy involving a security or securities is suitable for the customer, based on the information obtained through the reasonable diligence of the member or associated person to ascertain the customer's investment profile….").[10]  This is precisely the type of "sophisticated sales work" – *i.e.*, "collecting and analyzing client information and recommending appropriate investments" before recommending a transaction involving securities – that is exempt work. *Hein*, 511 F. Supp. 2d at 565, 573.

**2.    Plaintiffs Acknowledge That They Engaged In<br>
Administratively Exempt Financial Services Work.**

Concurrently with their Complaint, Plaintiffs filed a motion for conditional certification, in support of which they submitted their own declarations and various other documents describing their role as Financial Advisors for Merrill Lynch.  The materials Plaintiffs filed in support of their motion for conditional certification demonstrate that they engaged in precisely the type of financial services work that places them squarely within the administrative

---

[9]    Plaintiffs were both FINRA-registered representatives during the time they were in the Development Stage of the PMD Program.  *See* www.brokercheck.finra.org, (search for Plaintiff Blum at CRD #6006482 and Plaintiff Harrison at CRD # 5967613).
[10]    FINRA's rules are available at:
 http://finra.complinet.com/en/display/display.html?rbid=2403&element_id=607
(last visited April 1, 2015).

18

exemption.  *See Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000) (taking judicial notice of pleadings).

Plaintiffs acknowledge that their duties were to "identify[] potential clients," "bring in new accounts and new money, and sell[] financial products and services to existing customers." (Blum Decl, ¶8 (Dkt. No. 5-1); (Harrison Decl, ¶8 (Dkt. No. 5-2)).  The PMD Incentive Plan upon which Plaintiffs rely explains that Plaintiffs' work in this regard was "**financial profiling**" work.  *See* Dkt No. 5-3, p. 4 (emphasis in original).  Contrary to Plaintiffs' attempt to portray these activities as merely "sales," they are actually describing precisely the type of "sophisticated sales work" that involves collecting and analyzing a client's financial information and recommending appropriate securities transactions that falls squarely within the administrative exemption.  *See Hein*, 511 F. Supp. 2d at 565.  Specifically, "identifying potential clients," "bringing in new accounts and money," and "selling financial products to these individuals" are part and parcel of a registered representative's duties, and therefore fully consistent with the administrative exemption.  *See* DOL Opinion Letter FLSA 2006-43, p. 6 ("recommending products to clients" is exempt work) (citing *Wilshin v. Allstate Ins. Co.*, 212 F. Supp. 2d 1360, 1376-79 (M.D. Ga. 2002)).  "Financial profiling" is quintessentially exempt administrative work under § 541.203(b) – *i.e.*, analyzing client information and determining which products and accounts best suit the client's needs.

In short, Plaintiffs' actual duties are entirely consistent with FINRA's rules requiring registered representatives to exercise reasonable diligence to ascertain a client's investment profile before recommending or processing a transaction involving securities.  In turn, Plaintiffs' allegations of their actual duties performed are entirely consistent with the U.S. Department of Labor's regulations and Opinion Letter determining that such duties fall squarely within the

administrative exemption.  Accordingly, taking Plaintiffs allegations and the other evidence they have placed into the record, Plaintiffs have failed to state a *plausible* claim for overtime pay inasmuch as their own pleadings and evidence confirm that they were exempt administrative employees, and they cannot and have not plausibly alleged otherwise.  *See Twombly*, 550 U.S. at 557-58 (a theoretically "possible" claim is insufficient to meet the "plausibility" standard).

**D.    Plaintiffs Fail To Plausibly Allege A "Willful" Violation Of The FLSA.**

Additionally, to the extent Plaintiffs have stated a claim for relief under the FLSA, their allegations of "willfulness" are unsupported by any factual support and should be stricken.

The statute of limitations for a claim under the FLSA is generally two years.  *See* 29 U.S.C. § 255(a).  However, if Plaintiffs establish a "willful" violation, the statute of limitations can extend to three years.  *Id.*  Here, in an effort to obtain a three-year statute of limitations on their FLSA claim, Plaintiffs baldly allege that Defendants acted "willfully."  *See* Complaint, ¶¶8, 77-78, 88-90, 96.  But Plaintiffs do not support these bald allegations with any factual support. Plaintiffs' "willfulness" allegations should therefore be disregarded and/or stricken and the limitations period be limited to two years.  *See Twombly*, 550 U.S. at 555 ("a formulaic recitation of the elements of a cause of action will not do").

## CONCLUSION

For all the reasons stated above, Defendants respectfully request that Plaintiffs' Complaint be dismissed in its entirety without leave to amend.

Dated:  New York, New York
       April 1, 2015

               By:   *s/ Philip A. Goldstein*
                    Philip A. Goldstein, Esq.
                    *pagoldstein@mcguirewoods.com*
                    McGuireWoods LLP
                    1345 Avenue of the Americas, 7th Floor
                    New York, New York 10105
                    (212) 548-2100

                    Michael D. Mandel, Esq. (admitted *pro hac vice*)
                    Regina A. Musolino, Esq. (admitted *pro hac vice*)
                    *mmandel@mcguirewoods.com*
                    *rmusolino@mcguirewoods.com*
                    McGuireWoods LLP
                    1800 Century Park East, 8th Floor
                    Los Angeles, California 90067
                    (310) 315-8200

                    *Attorneys for Defendants*

65557569_3.docx

21