**OUTTEN & GOLDEN LLP**
Justin M. Swartz
Rachel Bien
Juno Turner
3 Park Avenue, 29th Floor
New York, NY 10016
Telephone: (212) 245-1000
Facsimile: (646) 509-2060

Jahan C. Sagafi (*pro hac vice* application
   forthcoming)
Katrina L. Eiland (*pro hac vice* application
   forthcoming)
1 Embarcadero Center, 38th Floor
San Francisco, CA 94111
Telephone: (415) 638-8800
Facsimile: (347) 390-2187

**SHAVITZ LAW GROUP, P.A.**
Gregg I. Shavitz (admitted *pro hac vice*)
Susan H. Stern (admitted *pro hac vice*)
Paolo C. Meireles
1515 South Federal Highway, Suite 404
Boca Raton, FL 33432
Telephone: (561) 447-8888
Facsimile: (561) 447-8831

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANDREW BLUM and ZAQ HARRISON, individually and on behalf of all others similarly situated, <br><br>      Plaintiffs, <br><br>   v. <br><br> MERRILL LYNCH & CO., INC.; MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., and BANK OF AMERICA CORPORATION, <br><br>      Defendants. | **No. 15 Civ. 1636 (GBD)** |

### PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS, STAY, OR TRANSFER PLAINTIFFS' COMPLAINT

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ........................................................................................ 1

PROCEDURAL BACKGROUND..................................................................................... 2

I.      The *Blum* Litigation on Behalf of Development Stage Trainees (This Action) ................ 2

II.     The *Litty* Litigation on Behalf of Later-Stage Trainees and Full-Fledged FAs
        Paid on a Commission Basis (C.D. Cal.) ............................................................... 4

        A.      *Litty*'s Unsuccessful Attempts at Class and Collective Certification..................... 4

        B.      The *Litty* Settlement and Plaintiffs' Motion to Intervene ........................................ 5

FACTUAL BACKGROUND............................................................................................ 7

ARGUMENT ................................................................................................................... 8

I.      This Case, Not *Litty*, Was First-Filed. ................................................................... 8

II.     Even If *Litty* Had Been First Filed, the First-Filed Rule Should Not Apply
        to This Case.................................................................................................. 10

        A.      Even If the First-Filed Rule Applies, the Balance of Conveniences and the Special
                Circumstances of This Case Favor Plaintiffs........................................................ 10

                1.      The Balance of Convenience Favors This Forum...................................... 11

                2.      The Special Circumstances of This Case Provide Additional Basis for
                        Denial of Defendants' Motion. .................................................................. 13

        B.      This Case Can Continue Even if the *Litty* Settlement Is Approved...................... 14

III.    Plaintiffs' Complaint Alleges a Claim for Unpaid Overtime Under the FLSA and
        Maryland Law.................................................................................................. 15

        A.      The 12(b)(6) Standard of Review ......................................................................... 15

        B.      Merrill Lynch's Affirmative Defenses Are Not "Established" By the Allegations
                In Plaintiffs' Complaint. ...................................................................................... 16

                1.      Merrill Lynch Cannot Prove the Outside Sales Exemption Applies By
                        Relying On the Allegations in Plaintiffs' Complaint................................. 17

                        a.      Plaintiffs' Primary Duty is Not Making Sales. ............................. 18

b.      Plaintiffs Were Not Customarily and Regularly Engaged at Merrill Lynch's Customers' Homes or Places of Business....................... 19

2.      Merrill Lynch Cannot Prove the Administrative Exemption Affirmative Defense Based on the Allegations in Plaintiffs' Complaint. ................... 20

a.      Plaintiffs' Primary Duty Was Not Directly Related to Assisting With the Running or Servicing of Merrill Lynch's Business. ...... 20

b.      Plaintiffs' Primary Duty Did Not Involve the Exercise of Discretion and Independent Judgment......................................... 21

C.      Plaintiffs' Complaint Properly Alleges Willfulness. ............................................. 24

IV.     Merrill Lynch Has Not Made a Case for a Stay............................................................... 25

CONCLUSION.......................................................................................................................... 25

## TABLE OF AUTHORITIES

**Cases**                                                                                      **Page(s)**

*AEP Energy Serv. Gas Holding Co. v. Bank of Am., N.A.*,
   626 F.3d 699 (2d Cir. 2010) ................................................................................... 14, 15

*Am. Steamship Owners Mut. Protection and Indem. Ass'n, Inc. v. Lafarge N. Am.,
   Inc.*,
   474 F. Supp. 2d 474 (S.D.N.Y. 2007) ........................................................... 11, 12, 13

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .................................................................................................. 16

*Authors Guild, Inc. v. Dialog Corp. (In re Literary Works in Elec. Databases
   Copyright Litig.)*,
   No. 00 Civ. 6049, 2001 WL 204212 (S.D.N.Y. Mar. 1, 2001) ............................... 25

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................ 15, 16

*Black v. Coughlin*,
   76 F.3d 72 (2d Cir. 1996) ........................................................................................ 17

*In re Bluetooth Headset Prod. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) ................................................................................... 15

*Dalheim v. KDFW-TV*,
   918 F.2d 1220 (2d Cir. 1990) .................................................................................. 21

*Damassia v. Duane Reade, Inc.*,
   No. 04 Civ. 8819, 2005 WL 1214337 (S.D.N.Y. May 20, 2005) ............................ 25

*Davis v. J.P. Morgan Chase*,
   587 F.3d 529 (2d Cir. 2009) ............................................................................... 20, 21

*Dejesus v. HF Mgmt. Servs., LLC*,
   726 F.3d 85 (2d Cir. 2013) ...................................................................................... 17

*Dejesus v. HF Mgmt. Servs., LLC*,
   No. 12 Civ. 1298, 2012 WL 5289571 (E.D.N.Y. Oct. 23, 2012) ................. 16, 17, 24

*Employers Ins. of Wausau v. Fox Entm't Grp., Inc.*,
   522 F.3d 271 (2d Cir. 2008) ............................................................................... 10, 11

*Faulkner v. Beer*,
   463 F.3d 130 (2d Cir. 2006) .................................................................................... 23

*First City Nat'l Bank & Trust v. Simmons*,
   878 F.2d 76 (2d Cir.1989)................................................................................9

*Flood v. Carlson Rests. Inc.*,
   No. 14 Civ. 2740, 2015 WL 1396257 (S.D.N.Y. Mar. 27, 2015) ...........................................11

*Galluzzo v. Holder*,
   No. 09 Civ. 2255, 2011 WL 222343 (2d Cir. Jan. 26, 2011)................................................14

*Goldstein v. Pataki*,
   516 F.3d 50 (2d Cir. 2008)................................................................................16

*Grandon v. Merrill Lynch & Co.*,
   147 F.3d 184 (2d Cir. 1998)............................................................................15, 16

*Hantz v. Prospect Mortgage, LLC*,
   11 F. Supp. 3d 612, 619-20 (E.D. Va. 2014) ......................................................................18

*Hein v. PNC Fin. Servs. Grp., Inc.*,
   511 F. Supp. 2d 563 (E.D. Pa. 2007) ......................................................................22

*HomeoPet LLC v. Speed Lab., Inc.*,
   No. 14 Civ. 663, 2014 WL 2600136 (E.D.N.Y. June 11, 2014)...........................................14

*Hoover v. Ronwin*,
   466 U.S. 558 (1984)................................................................................15

*Litty v. Merrill Lynch & Co. et al.*,
   No. 14 Civ. 425-PA (PJW) (C.D. Cal.), filed .............................................. *passim*

*Litty v. Merrill Lynch & Co.*,
   No. 14 Civ. 0425, 2014 WL 5904904 (C.D. Cal. Nov. 10, 2014) .........................................5, 6

*Litty v. Merrill Lynch & Co.*,
   No. 14 Civ. 0425, 2014 WL 5904907 (C.D. Cal. Aug. 4, 2014)...........................................5, 6

*Lloyd v. J.P. Morgan Chase & Co.*,
   No. 11 Civ. 9305, 2012 WL 3339045 (S.D.N.Y. Aug. 14, 2012) ...........................................9

*Martignago v. Merrill Lynch & Co.*,
   No. 11 Civ. 3923, 2012 WL 112246 (S.D.N.Y. Jan. 12, 2012)..........................................12, 13

*McLaughlin v. Richland Shoe Co.*,
   486 U.S. 128 (1988)................................................................................24, 25

*Moran v. GTL Const., LLC*,
   No. 06 Civ. 168, 2007 WL 2142343 (S.D.N.Y. July 24, 2007) ...........................................24, 25

*In re Novartis Wage & Hour Litig.*,
    611 F.3d 141 (2d. Cir 2010)......................................................................17

*Pippins v. KPMG, LLP*,
    759 F.3d 235 (2d Cir. 2014).....................................................................21

*Pippins v. KPMG LLP*,
    No. 11 Civ. 0377, 2011 WL 1143010 (S.D.N.Y. 2011) ................................... *passim*

*Raniere v. Citigroup Inc.*,
    827 F. Supp. 2d 294 (S.D.N.Y. 2011).....................................................9, 10

*Reiseck v. Universal Comm'cns of Miami, Inc.*,
    591 F.3d 101 (2d Cir. 2010).....................................................................21

*Reliance Ins. Co. v. Six Star, Inc.*,
    155 F. Supp. 2d. 49 (S.D.N.Y. 2001).......................................................11

*Revise Clothing, Inc. v. Levi Strauss & Co.*,
    No. 10 Civ 5843, 2010 WL 4964099 (S.D.N.Y. Dec. 6, 2010)............................14

*Reynolds v. Beneficial Nat'l Bank*,
    288 F.3d 277 (7th Cir. 2002) ...................................................................6

*Siegfried v. Takeda Pharm. N. Am., Inc.*,
    No. 10 Civ. 02713, 2011 WL 1430333 (N.D. Ohio Apr. 14, 2011) .......................10

*Slow v. Prestige Merch. Co.*,
    No. 08 Civ 4425, 2011 WL 4373516 (E.D.N.Y. Sept. 19, 2011).........................19

*Steavens v. Elec. Data Sys. Corp.*,
    No. 07 Civ. 14536, 2008 WL 5062847 (E.D. Mich. Nov. 25, 2008) .....................10

*Taylor v. Waddell & Reed, Inc.*,
    No. 09 Civ. 2909, 2012 WL 10669 (S.D. Cal. Jan. 3, 2012)...........................18, 19

*Toy Biz, Inc. v. Centuri Corp.*,
    990 F. Supp. 328 (S.D.N.Y. 1998).........................................................12

*Tracy v. NVR, Inc.*,
    599 F. Supp. 2d 359 (W.D.N.Y. 2009) .....................................................19

*Turner v. Human Genome Sci., Inc.*, 292 F. Supp. 2d 738, 744 (D. Md. 2003) ..........................16

*Wong v. HSBC Mortgage Corp. (USA)*,
    No. 07 Civ. 2446, 2008 WL 753889 (N.D. Cal. Mar. 19, 2008)............................23

**Statutes**

28 U.S.C. § 1404(a) ...................................................................................................11

29 U.S.C. 16(b) ...........................................................................................................3

29 U.S.C.§ 213(a)(1) ................................................................................................20

29 U.S.C. § 255(a) ....................................................................................................24

**Other Authorities**

29 C.F.R. § 541.200 ..................................................................................................20

29 C.F.R. § 541.201 ..................................................................................................20

29 C.F.R. § 541.202 .............................................................................................20, 22

29 C.F.R. § 541.203 ..................................................................................................23

29 C.F.R. § 541.500 .............................................................................................17, 18

29 C.F.R. § 541.502 ..................................................................................................19

29 C.F.R. § 541.503 ..................................................................................................19

29 C.F.R. § 541.701 ..................................................................................................18

29 C.F.R. § 541.705 ..................................................................................................22

DOL Opinion Letter FLSA2006-43 (Nov. 27, 2006) ................................................24

## PRELIMINARY STATEMENT

Merrill Lynch's motion attempts to delay resolution of Plaintiffs' pending motion for conditional collective action certification under the Fair Labor Standards Act ("FLSA") until a district court in California rules on the inadequately supported, overbroad, low-value settlement that Merrill Lynch negotiated with a plaintiff in an unrelated case, *Litty v. Merrill Lynch & Co. et al.*  The Court should deny this motion, allow this case to proceed as normal here (the district in which Merrill Lynch is headquartered), rule on Plaintiffs' notice motion, and allow potential members of the FLSA collective to learn about their claims and decide whether to opt in.

Merrill Lynch bases its motion on the factually flawed notion that *Litty* was filed first. Because the claims being pursued in this case were first filed here, not in *Litty*, and because *Litty* is currently only a single-plaintiff case, the first-filed rule does not apply.

Before filing this action, Plaintiffs negotiated with Merrill Lynch for several months, under a tolling agreement, to attempt to resolve claims of a focused sub-population of Development Stage Financial Advisor ("FA") Trainees.  Simultaneously, Litty pursued his claims in California federal court, and lost his motion for FLSA and Rule 23 certification on behalf of a sprawling group of more senior employees who were past the Development Stage (i.e., later-stage FA Trainees as well as full-fledged FAs).  The Ninth Circuit rejected his Rule 23(f) petition.  The district court struck the class and collective allegations.  Litty was left with an individual, single-plaintiff case.

Then, Merrill Lynch engaged in settlement discussions with Litty to resolve his claims. Suddenly, just after Plaintiffs filed this action, Merrill Lynch and Litty filed a global settlement of all claims – not only for the later-stage FA Trainees and full-fledged FAs but also for the Development Stage Trainees, despite the facts that those claims had not even been within Litty's

very broad (and unsuccessful) certification motion, and that Litty himself had never been a Development Stage Trainee.

Merrill Lynch selectively cites facts to obscure the procedural posture here. Merrill Lynch never mentions its lengthy settlement negotiations with Plaintiffs in an attempt to resolve their claims on a class-wide basis – something it surely would not have done had it understood Plaintiffs' claims to be subsumed by *Litty* all along. Merrill Lynch likewise omits the fact that, since March 7, 2014, the operative complaint in *Litty* has excluded Plaintiffs' proposed class (Development Stage Trainees), because it included only those FAs and FA Trainees paid on a commission basis (which Development Stage Trainees are not). Finally, Merrill Lynch's motion inaccurately states that Development Stage Trainees, like Plaintiffs, have remained putative class members throughout the *Litty* litigation, even though the class and collective allegations were struck from *Litty* on Merrill Lynch's motion.

In a further attempt to derail Plaintiffs' claims, Merrill Lynch seeks dismissal on the merits based on the frivolous argument that Plaintiffs' have pleaded their way into two highly fact-specific exemptions. The Court should reject this transparent attempt to delay the proceedings and deny Merrill Lynch's motion in its entirety.

## PROCEDURAL BACKGROUND

### I.    The *Blum* Litigation on Behalf of Development Stage Trainees (This Action)

Plaintiffs Andrew Blum and Zaq Harrison brought this wage and hour class and collective action against Defendants Merrill Lynch & Co., Inc., Merrill Lynch, Pierce, Fenner & Smith, Inc.; and Bank of America Corporation (collectively, "Merrill Lynch" or "Defendants") on behalf of a specific group of FA Trainees called "Development Stage Trainees" employed in its Practice Management Development Program ("PMD Program"). *See* Plaintiffs' Class and

Collective Action Complaint, filed on March, 5, 2015, ECF No. 1, ("Compl."), ¶ 1.  Plaintiffs

filed claims on behalf of themselves and other Development Stage Trainees, which are FA

Trainees in the second stage of Merrill Lynch's PMD Program who are classified as exempt and

paid on a salary basis.  *Id.*  Plaintiffs allege that Development Stage Trainees are misclassified as

exempt and illegally denied overtime under the FLSA and Maryland wage and hour law.  *Id.* ¶ 2.

Prior to Plaintiffs' filing their Complaint, beginning in June 2014, the parties engaged in

substantial pre-suit settlement negotiations, including exchanging significant discovery.  *See*

Decl. of Justin M. Swartz in Opp'n to Defs.' Mot. to Dismiss, Stay, or Transfer Pls.' Compl.

("Swartz Decl."),[1] Ex. B (Sagafi Decl.) ¶ 7.  The parties attended an all-day mediation in San

Francisco, California, on October 14, 2014, and although the mediation did not resolve the case,

the parties continued to negotiate over the next several months.  *Id.* ¶ 8.

Plaintiffs filed their Complaint on March 5, 2015, ECF No. 1, and their Motion for

Conditional Certification and Court-Authorized Notice Pursuant to 29 U.S.C. 16(b) (the "16(b)

Motion") on March 9, 2015.  ECF No. 3.  On March 18, 2015, Merrill Lynch filed a letter

requesting that the Court stay the 16(b) Motion pending resolution of this motion, which had yet

to be filed.  ECF No. 7.  Plaintiffs opposed the request, arguing that it was premature, meritless,

and would prejudice the claims of Plaintiffs and the putative class and collective.  ECF No. 12.

On March 23, 2015, the Court denied Merrill Lynch's request and instead granted it an extension

on its opposition to the 16(b) Motion until April 22, 2015.  ECF No. 16.  Merrill Lynch renewed

---

[1]     Unless otherwise noted, all Exhibits are to the Swartz Decl.  For the Court's convenience, Plaintiffs provide the Court with copies of the documents filed in *Litty* cited herein.  The sole exception is Exhibit A to the Declaration of Jahan C. Sagafi in Support of Plaintiff-Intervenors' Motion to Intervene, which has been ordered sealed by the *Litty* court, and which Defendants have moved to seal here.  *See Litty* ECF No. 126; ECF No. 34. Plaintiffs will provide a copy of the document in question to Chambers with their courtesy copies.

its request in a second letter on April 2, 2015, arguing that Plaintiffs' motion to intervene in *Litty*

justified a stay.  ECF No. 32.  Plaintiffs once again opposed the request.   ECF No. 33.

## II.     The *Litty* Litigation on Behalf of Later-Stage Trainees and Full-Fledged FAs Paid on a Commission Basis (C.D. Cal.)

### A.     Litty's Unsuccessful Attempts at Class and Collective Certification

While the parties were attempting to resolve Plaintiffs' claims on a classwide basis, a

separate litigation involving FAs was underway in California: *Litty v. Merrill Lynch & Co. et al.*,

No. 14 Civ. 425-PA (PJW) (C.D. Cal.), filed on January 7, 2014.  The *Litty* litigation was

brought by a single full-fledged commissioned FA who did not work for Merrill Lynch as a

Development Stage Trainee during the class period.  Ex. H (*Litty* SAC) ¶ 4 (Litty was "employed

as a *Financial Advisor* at Bank of America Corporation when it completed its purchase of

Merrill Lynch in 2009") (emphasis added).  Although the *Litty* complaint initially included a

class consisting of "Financial Advisors . . . and/or Financial Advisor Trainees who are or have

been employed by Defendants and who are and/or were employed by Defendants on a

commission or salary basis," he amended his complaint shortly after filing it *to limit* his putative

class and collective to *only* those FAs and FA Trainees who "are or have been employed by

Defendants and who are and/or were employed by Defendants on a commission basis."  Ex. G

(*Litty* FAC) ¶ 4.  Litty maintained that class definition throughout the litigation of his case,

including in his Second Amended Complaint, filed on March 28, 2014, and in his motion for

conditional certification under the FLSA, which sought to certify a collective of FAs and FA

trainees *who did not receive a guaranteed minimum salary*, and were instead paid on a

commission basis.  *See* Ex. J (*Litty* Cert. Br.) at 16, 16 n.7.  Only in his proposed Third Amended

Complaint, filed on March 10, 2015 – *after* Plaintiffs filed their Complaint and their motion for

conditional certification – did Litty attempt to sweep into his settlement class the claims of

Plaintiffs and the putative FLSA collective in this action.  Ex. I (*Litty* Proposed TAC) ¶ 4.

On August 4, 2014, the *Litty* court denied Litty's motions for conditional certification

under the FLSA and class certification under Fed. R. Civ. P. 23.  *Litty v. Merrill Lynch & Co.*,

No. 14 Civ. 0425, 2014 WL 5904907, at *2 (C.D. Cal. Aug. 4, 2014) ("*Litty I*").  On November

20, 2014, the Ninth Circuit Court of Appeals denied Litty's motion for interlocutory review of

that decision.  No. 14-80116 (9th Cir. Nov. 20, 2014).

The *Litty* court subsequently granted Merrill Lynch's motion to strike the class and

collective allegations, rendering *Litty* a single-plaintiff case.  *Litty v. Merrill Lynch & Co.*, No.

14 Civ. 0425, 2014 WL 5904904, at *2 (C.D. Cal. Nov. 10, 2014) ("*Litty II*").  Defendants

misrepresent this aspect of *Litty*'s procedural history, *see* Defs.' Br. at 5:  contrary to their

allegation, since November 10, 2014, *no* FA trainees have been putative class members in *Litty*

because the class and collective allegations were struck at Merrill Lynch's request.[2]  *Id.*

**B.    The *Litty* Settlement and Plaintiffs' Motion to Intervene**

On November 21, 2014 – just over a month after the parties here met in mediation, and

while the parties were still involved in negotiations – the *Litty* parties held a mediation of their

own, using the same mediator used by the parties in this case.  Ex. M (*Litty* PA Mot.) at 5; Ex. B

(Sagafi Decl.) ¶¶ 8-9.  Merrill Lynch mediated with Litty at a time when Litty and his counsel

were in a tremendously weakened bargaining position.  The court had recently denied Litty's

_____

[2]      As further evidence that Litty's case did not include Plaintiffs' claims, Plaintiffs note
that, in response to Merrill Lynch's motion to strike, Litty proposed to narrow the class
definition in an attempt to salvage his proposed class and collective action.  Ex. L (*Litty* Opp. to
Mot. to Strike) at 9-10.  Litty's proposed revised class definition jettisoned Trainees entirely and
encompassed only full-fledged FAs in job code BK016 (the job code Litty held as a full-fledged
FA).  *Id.*  ("The persons Plaintiff seeks to represent are: current and former Merrill Lynch
Financial Advisors ("Financial Advisors"[)] who have a job code of 'BK016' at Merrill
Lynch.").

motion for FLSA and Rule 23 certification and struck all class, collective, and representative allegations in his complaint. *Litty I*, 2014 WL 5904907, at *2; *Litty II*, 2014 WL 5904904, at *2. The Ninth Circuit then denied Plaintiff's motion for interlocutory appeal of the Court's denial pursuant to Rule 23(f). No. 14-80116 (9th Cir. Nov. 20, 2014). These unfavorable events left Litty with an individual case and no real chance to resuscitate his failed class action.

As a result, Litty and his counsel were in an exceedingly poor position to broker a class settlement of any kind, let alone a global deal that swept in distinct (and more valuable) claims than those Litty had originally alleged – and that Merrill Lynch had been attempting to settle with Plaintiffs. Nevertheless, Litty agreed to settle the claims of the uncertified class and collective pled in his complaint and, in the process, also agreed to expand the class and collective definitions to include the claims of Plaintiffs and the class members here. The resulting deal has all the indicia of a classic reverse auction – a win-win-lose, wherein the defendant gets releases at an artificially depressed price, counsel in the inferior bargaining position can salvage a significant fee from a disastrous position (leveraging the position of other counsel in another, better-situated case), and the class members lose.[3]

On March 10, 2015, Litty moved for preliminary approval of a proposed nationwide settlement class that, for the first time since he filed his original complaint, would include the claims of salaried Development Stage Trainees. Ex. M (*Litty* PA Mot.) at 5-6.

The proposed *Litty* settlement is a fire sale, seeking to fold Plaintiffs' claims into an already massive class that includes thousands of full-fledged FAs and FA Trainees paid on a commission basis. Specifically, the proposed *Litty* settlement would extinguish the overtime

---

[3]     *See Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 282 (7th Cir. 2002) (describing a reverse auction as "the practice whereby the defendant in a series of class actions picks the most ineffectual class lawyers to negotiate a settlement with in the hope that the district court will approve a weak settlement that will preclude other claims against the defendant").

claims of over 16,000 FAs and FA Trainees, including those of Plaintiffs and other Development

Stage Trainees, for relief of $5,000,000 (an average, after attorneys' fees, of $90 per non-

California class member, and $1,100 per California class member).  Ex. N (Manifold Decl.) ¶ 10.

Because of the gross inadequacy of the proposed *Litty* settlement, Plaintiffs moved to

intervene in *Litty* in order to oppose its approval.  *See* Ex. A (Pls.' Mot. to Intervene).  Plaintiffs

do not seek to litigate their claims in *Litty*; rather, they seek to present facts and arguments to the

*Litty* court to enable it to make informed decisions about settlement approval.  *See id.*

### FACTUAL BACKGROUND

The PMD program has five distinct stages that must be completed before new hires can

become FAs: (1) Training Stage; (2) Development Stage; (3) Stage 1; (4) Stage 2; and (5) Stage

3.  *See* Ex. A (Pls.' Mot. to Intervene) at 15-17; Ex. B (Sagafi Decl., Ex. D).  After successfully

completing the PMD Program, the Trainee graduates to become a full-fledged FA.  *Id.*  Each of

these stages involved distinct job duties and is subject to different compensation arrangements.

*Id.*  Plaintiffs focus this litigation on the FA Trainees in the Development Stage only.

Merrill Lynch classifies Development Stage Trainees as exempt from the overtime

requirements of the FLSA and state law and pays them a guaranteed salary.  Compl. ¶¶ 1, 69-71.

Plaintiffs and the class they seek to represent were paid on a salary basis, *see id.* ¶ 80, and did not

earn any incentive or commission compensation while employed as Development Stage

Trainees.  Ex. B (Sagafi Decl., Exs. B & C).

Plaintiffs allege that Development Stage Trainees' primary duties include "inside sales

and customer service." Compl. ¶ 66.  Development Stage Trainees "engage primarily in lead

generation activities," by "calling potential clients and conducting appointments with potential

clients to encourage them to do business with Defendants."  These activities are very different

from those performed by full-fledged, experienced FAs like Litty, who are paid on a commission basis and who gain increasing responsibility and discretion as they advance.  Ex. B (Sagafi Decl., Ex. D).  Newly-licensed Development Stage Trainees like Plaintiffs participate in a highly regimented training program designed to teach them core sales and customer service skills.  Ex. A (Pls.' Mot. to Intervene) at 16.  Those two populations have meaningfully different chances of success in a FLSA misclassification case like this one.

## ARGUMENT

### I.   This Case, Not *Litty*, Was First-Filed.

The *Litty* settlement does not provide a basis to dismiss Plaintiffs' Complaint for the simple reason that this case, and not *Litty*, was filed first, within the meaning of the first-filed rule.  As summarized above, the chronology is clear.  Litty filed on behalf of a broad group of FA Trainees and full-fledged FAs (defined as those "paid on a commission or salary basis"), but within two months narrowed the class to encompass only FA Trainees and full-fledged FAs "paid on a commission basis."  *Compare* Ex. F (*Litty* Compl.) ¶ 5 with Ex. G (*Litty* FAC) ¶ 4.  This is the population that Litty focused on in litigation.  It excludes Development Stage Trainees because they are paid on a salary basis not a commission basis.  Compl. ¶ 1.  Litty moved unsuccessfully for FLSA and Rule 23 certification, failed in his Rule 23(f) appeal to the Ninth Circuit, and lost his argument against Merrill Lynch's motion to strike the collective and class allegations.  This left him with an individual single-plaintiff case.

On March 5, 2015, Plaintiffs filed this action on behalf of Development Stage Trainees only.  This population had never been the focus of *Litty*.  Days thereafter, Litty and Merrill Lynch filed their proposed settlement that embraced not only the population that Litty had (unsuccessfully) litigated (later-stage FA Trainees and full-fledged FAs paid on a commission

8

basis), but also, suddenly, the Development Stage Trainees who had been the focus of Plaintiffs'

and Merrill Lynch's settlement talks before a respected mediator over the past several months.

Ex. K (*Litty* Settlement Agreement) ¶¶ 2-3; Ex. E (Tolling Agreement) at 1.  Along with the

proposed settlement, Litty filed a proposed amended complaint that will (if granted) now include

Development Stage Trainees.  Ex. I (*Litty* Proposed TAC) ¶ 4.

 Because the first-filed rule applies only "[w]here there are two *competing* lawsuits,"

*First City Nat'l Bank & Trust v. Simmons*, 878 F.2d 76, 79 (2d Cir.1989) (emphasis added), the

pendency of *Litty* presents no barrier to litigation and FLSA collective certification of this case.

*See Raniere v. Citigroup Inc.,* 827 F. Supp. 2d 294, 301 (S.D.N.Y. 2011), *rev'd on other grounds*

533 Fed. App'x 11 (2d Cir. 2013) ("[D]uplicative lawsuits [are] those in which the issues have

such an identity that a determination in one action leaves little or nothing to be determined in the

other.") (internal quotation marks omitted).

Merrill Lynch argues that the *Litty* settlement "subsumes" this case, Defs.' Br. at 8, but

omit the fact that *Litty* did not even purport to include Plaintiffs' claims until the parties there

attempted to sweep them into the fire-sale settlement.  Under these circumstances, the first-filed

rule does not apply because resolution of *Litty* will not dispose of Plaintiffs' claims here,

especially if the *Litty* court rejects the glaringly unsupported, imbalanced, and low-value

settlement.  The two cases are therefore not duplicative.  *See, e.g., Lloyd v. J.P. Morgan Chase &*

*Co.*, No. 11 Civ. 9305, 2012 WL 3339045, at *1 (S.D.N.Y. Aug. 14, 2012) ("although there is

some basic similarity of claims between the two actions and one defendant is identical, transfer

under the first-filed rule is unwarranted because the . . . claims and class definition in the [first-

filed] action do not subsume, and their resolution would not be conclusive of, those asserted in

9

the instant action"); *Raniere*, 827 F. Supp. 2d at 301 (rejecting first-filed rule in FLSA case where first case would not dispose of claims in second suit).

The cases on which Merrill Lynch relies are inapplicable, because in each, the first-filed rule was invoked to dismiss or transfer a case that was indisputably filed second. *See, e.g.*, *Siegfried v. Takeda Pharm. N. Am., Inc.*, No. 10 Civ. 02713, 2011 WL 1430333, at *5 (N.D. Ohio Apr. 14, 2011) (first-filed rule applied where second case was filed two months after initial case); *Steavens v. Elec. Data Sys. Corp.*, No. 07 Civ. 14536, 2008 WL 5062847, at *2 (E.D. Mich. Nov. 25, 2008) (parties "in apparent agreement that the first-to-file rule is applicable"). These cases do not apply here because this case, and not *Litty*, was filed first.

## II.     Even If *Litty* Had Been First Filed, the First-Filed Rule Should Not Apply to This Case.

### A.     Even If the First-Filed Rule Applies, the Balance of Conveniences and the Special Circumstances of This Case Favor Plaintiffs.

The first-filed rule is only a "presumption that may be rebutted by proof of the desirability of proceeding in the forum of the second-filed action." *Employers Ins. of Wausau v. Fox Entm't Grp., Inc.*, 522 F.3d 271, 275 (2d Cir. 2008) (quoting *Berisford Capital Corp. v. Cent. States, Se. & Sw. Areas Pension Fund*, 677 F. Supp. 220, 222 (S.D.N.Y. 1988); *Pippins v. KPMG LLP*, No. 11 Civ. 0377, 2011 WL 1143010, at *2 (S.D.N.Y. 2011) (same).

The Second Circuit has identified two exceptions to the first-filed rule: "(1) where the balance of convenience favors the second-filed action, and (2) where special circumstances warrant giving priority to the second suit." *Employers Ins. of Wausau,* 522 F.3d at 275 (citations and internal quotation marks omitted).  Both exceptions apply here.

10

### 1.     The Balance of Convenience Favors This Forum.

The factors to be considered in the balance of convenience analysis are "essentially the same as those considered in connection with motions to transfer venue pursuant to 28 U.S.C. § 1404(a)," *id.*, namely: "(1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of the parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, [and] (7) the relative means of the parties." *Id.* (citations omitted).

Determining the balance "is essentially an equitable task" left to this Court's discretion. *Reliance Ins. Co. v. Six Star, Inc.*, 155 F. Supp. 2d 49, 57 (S.D.N.Y. 2001) ("There is no rigid formula for balancing these factors and no single one of them is determinative."). In addition, Plaintiffs need only show that the balance of these factors "tilts slightly in [their] favor" to warrant rejection of the first-filed rule. *Pippins*, 2011 WL 1143010 at *4-5. As demonstrated below, the balance favors this Court's retention of this matter.

As to the first factor, the district court must "give due deference to the plaintiff's choice of forum which should not be disturbed unless the balance of convenience and justice weigh heavily in favor of defendant's forum." *Am. Steamship Owners Mut. Protection and Indem. Ass'n, Inc. v. Lafarge N. Am., Inc.*, 474 F. Supp. 2d 474, 480 (S.D.N.Y. 2007); *see also Flood v. Carlson Rests. Inc.*, No. 14 Civ. 2740, 2015 WL 1396257, at *2 (S.D.N.Y. Mar. 27, 2015) ("A plaintiff's choice of forum is entitled to significant consideration and will not be disturbed unless other factors weigh strongly in favor of transfer.") (internal quotation and citation omitted). This principle is "even greater where there is a material connection or significant contact between the forum state and the events underlying the claim." *Am. Steamship*, 474 F. Supp. 2d at 486

11

(favoring plaintiff's choice of forum in second-filed action where it was location of disputed contract and defendants' place of residence); *Toy Biz, Inc. v. Centuri Corp.*, 990 F. Supp. 328, 330 (S.D.N.Y. 1998) (weight accorded to plaintiff's chosen forum increases where forum is defendant's principal place of business). Here, Plaintiffs selected the New York forum because it is the headquarters and principal place of business for all of the Defendants. Compl. ¶¶ 44-46; *see Pippins*, 2011 WL 1143010 at *5 (defendant's location within chosen forum weighs against dismissal or transfer). This factor weighs heavily in favor of keeping the case in New York.

As to the fourth factor, the convenience of the parties favors this Court as the proper forum. Not only are many of the proposed class members located in New York, but this jurisdiction is more convenient for Merrill Lynch as well. Defendants' headquarters and principal places of business are in New York City. Compl. ¶¶ 44-47; *Martignago v. Merrill Lynch & Co.*, No. 11 Civ. 3923, 2012 WL 112246, at *7 (S.D.N.Y. Jan. 12, 2012) ("The Merrill Lynch Defendants are headquartered in New York and, therefore, cannot claim that New York is an inconvenient forum."); *Pippins*, 2011 WL 1143010 at *5 (defendant "would not be terribly inconvenienced litigating . . . where its headquarters is located").

As to the second, third, fifth, and sixth factors, the convenience of witnesses, location of documents, locus of operative facts, and ability to compel the attendance of unwilling witnesses all militate heavily against application of the first-filed rule. "Where a plaintiff asserts – on behalf of herself and a nationwide collective class – FLSA violations flowing from a corporate policy mandating an allegedly unlawful compensation scheme, courts generally conclude that the 'more critical and extensive [testimony] is likely to be provided by the parties and witnesses residing . . . where [the company] is headquartered and [where the] executives who set company-wide policies are based.'" *Martignago*, 2012 WL 112246, at *6 (quoting *Rindfleisch v. Gentiva*

*Health Sys., Inc.,* 752 F. Supp. 2d 246, 256 (E.D.N.Y. 2010)).  New York is the epicenter of this

case.  It is the location where Defendants' unlawful wage policy was determined, and likely

where the witnesses and documentary proof of Defendants' FLSA violations will be found.  *See*

*Am. Steamship*, 474 F. Supp. 2d at 487; *Pippins*, 2011 WL 1143010 at *5 (in FLSA exemption

case involving "a top-down corporate structure, the locus of operative facts is the location where

policy is determined, corporate headquarters").  Although the named Plaintiffs are citizens of

other states (Florida and Maryland), they are not "unwilling" witnesses, and California is

certainly not more convenient for them than New York.

     As to the seventh factor, the relative means of the parties merits confirmation of

Plaintiffs' chosen forum.  Plaintiffs are individuals who were or are employed by Defendants as

salaried, non-commission based trainees.  Compl. ¶ 80.  Their FLSA claim is limited to the

roughly three-month period during the Development Stage of their training.  *Id.* ¶¶ 19, 32.

Defendants, on the other hand, comprise one of the largest, multi-billion dollar global financial

services companies in the world.  The relative means is no contest.  *See, e.g., Pippins*, 2011 WL

1143010 at *5 (finding this factor to weigh "heavily" in plaintiffs' favor in analogous

circumstances).  Because all relevant considerations favor this forum, this Court should honor

Plaintiffs' choice of forum and deny dismissal and transfer.

## 2. The Special Circumstances of This Case Provide Additional Basis for Denial of Defendants' Motion.

     The Second Circuit has identified certain "'special circumstances' that warrant departure

from the first-filed rule . . . includ[ing] manipulative or deceptive behavior."  *Pippins*, 2011 WL

1143010, at *2 (quoting *Emp'rs Ins. of Wausau,* 522 F.3d at 276).  Although this exception is

typically invoked against second-filing plaintiffs, the circumstances here warrant its application

against Merrill Lynch.

13

As set forth above, the Parties were in active settlement negotiations when, unbeknownst to Plaintiffs, Merrill Lynch reached a settlement in *Litty*.   After it became clear that settlement was off the table, Plaintiffs filed their Complaint.   Only after Plaintiffs filed their Complaint did the *Litty* parties seek judicial approval of their settlement, and only then did Litty attempt to sweep Plaintiffs' claims into his proposed settlement.   In light of this reality, Merrill Lynch's first-filed argument crumbles.   Granting Merrill Lynch's motion here would merely sanction this type of gamesmanship.  *See HomeoPet LLC v. Speed Lab., Inc.*, No. 14 Civ. 663, 2014 WL 2600136, at *15 (E.D.N.Y. June 11, 2014) ("the first-filed rule should not apply where the party to benefit from the first-filed rule induced the other party to delay filing….").

Moreover, even if Litty *had* filed his proposed Third Amended Complaint before Plaintiffs initiated this action, "[w]here a party is prepared to pursue a lawsuit, but first desires to attempt settlement discussions, that party should not be deprived of the first-filed rule's benefit simply because its adversary used the resulting delay in filing to proceed with the mirror image of the anticipated suit."  *Revise Clothing, Inc. v. Levi Strauss & Co.*, No. 10 Civ. 5843, 2010 WL 4964099, at *3 (S.D.N.Y. Dec. 6, 2010) (internal quotation and citation omitted).

### B.    This Case Can Continue Even if the *Litty* Settlement Is Approved.

The Second Circuit typically applies the first-filed principle only where the two cases cannot, as a functional matter, co-exist.  *See, e.g., Galluzzo v. Holder*, No. 09 Civ. 2255, 2011 WL 222343, at *3 (2d Cir. Jan. 26, 2011) (first-filed rule applies against same person who brought administrative-review action and separate civil suit, both challenging his immigration status); *AEP Energy Serv. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 722-25 (2d Cir. 2010) (applying first-filed rule in case with same parties on both sides, and identical claim proceeding in Texas state court).

Here, the two cases can co-exist.  Notice to the collective here will afford class members an opportunity to protect their rights by opting in and tolling their FLSA statute of limitations, and to make a more informed decision whether to accept the $90 offered to non-California class members in *Litty*.  Furthermore, even if *Litty* were preliminarily approved, there would still be a strong chance that it would not win final approval or, if it did, would be overturned on appeal, given the serious scrutiny that the Ninth Circuit applies to class action settlements, especially in suspicious circumstances and where the settlement is inadequately justified by the parties.  *See In re Bluetooth Headset Prod. Liab. Litig*., 654 F.3d 935, 947 (9th Cir. 2011) (proposed settlements reached where a class has not been certified "must withstand an even higher level of scrutiny" and courts must be "particularly vigilant" for subtle signs of collusion).  Merrill Lynch should not be able to interpose a flawed settlement with little chance of approval to preclude Plaintiffs from pursuing their stronger, more focused claims here.

### III.   Plaintiffs' Complaint Alleges a Claim for Unpaid Overtime Under the FLSA and Maryland Law.

#### A.      The 12(b)(6) Standard of Review

Rule 8 of the Federal Rules of Civil Procedure "requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citation omitted). In deciding a motion to dismiss, courts must view the allegations of the complaint as true, and construe those facts in a manner favorable to the pleader.  *Hoover v. Ronwin*, 466 U.S. 558, 587 (1984); *Grandon v. Merrill Lynch & Co*., 147 F.3d 184, 188 (2d Cir. 1998).  A Rule 12(b)(6) motion can be granted only if the plaintiff fails to "provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'"  *Goldstein v. Pataki*,

516 F.3d 50, 56 (2d Cir. 2008) (*citing ATSI Commc'ns., Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)).  The question before the Court is whether Plaintiffs have articulated "enough facts to state a claim to relief that is plausible on its face."  *Twombly,* 550 U.S. at 570; *see also Ashcroft v. Iqbal,* 556 U.S. 662 (2009).

Here, the well-pled allegations in Plaintiffs' Complaint establish, for purposes of this motion, that they and other similarly situated Development Stage Trainees worked more than 40 hours per week and were not paid one and a half times the regular rate of pay for hours worked in excess of 40 per week.  *See* Compl. ¶¶ 24-26; 36-38; 71.  These allegations are sufficient to state a claim for unpaid overtime premiums under the FLSA and Maryland law.  *See Dejesus v. HF Mgmt. Servs., LLC*, No. 12 Civ. 1298, 2012 WL 5289571, at *1 (E.D.N.Y. Oct. 23, 2012) *aff'd,* 726 F.3d 85 (2d Cir. 2013) ("To properly state a claim under the FLSA, the plaintiff must allege that: (1) she was an employee eligible for overtime pay; and (2) that she actually worked overtime without proper compensation.").[4]

### B.   Merrill Lynch's Affirmative Defenses Are Not "Established" By the Allegations In Plaintiffs' Complaint.

Merrill Lynch is wrong that it can prove its affirmative defenses from facts pled in the complaint.  Where an affirmative defense is fact-intensive, like an FLSA exemption, it is inappropriate to raise on a pre-answer motion unless the allegations in the complaint clearly establish the defense.  *Dejesus*, 2012 WL 5289571, at *2 (exemption defense "likely to be heavily fact-intensive and inappropriate for resolution at the motion to dismiss stage").

Moreover, it is well-settled that Plaintiffs have no obligation to anticipate and refute potential affirmative defenses in the complaint.  *Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85,

---

[4]     As Defendants admit, Defs.' Br. at 13, Maryland law tracks the FLSA and the same analysis applies to those claims.  *Turner v. Human Genome Sci., Inc.*, 292 F. Supp. 2d 738, 744 (D. Md. 2003).

91 n. 7 (2d Cir. 2013) *cert. denied,* 134 S. Ct. 918 (2014) (plaintiff "not required to plead facts at [pleading] stage of the proceedings to support her position that she was a non-exempt employee"); *see also Black v. Coughlin*, 76 F.3d 72, 75 (2d Cir. 1996) (plaintiff not required to plead absence of an affirmative defense).

In any event, exemptions from the overtime requirements of the FLSA are affirmative defenses that are a defendant's burden to prove and are narrowly construed against the defendant.  *See Dejesus*, 726 F.3d at 91 n. 7, ("a claim of exemption under the FLSA is an affirmative defense, and the employer bears the burden of proof in making any such claim"); *In re Novartis Wage & Hour Litig.*, 611 F.3d 141, 150 (2d. Cir 2010).  Here, Defendants have not yet answered the Complaint or proffered any affirmative defenses, let alone proven any exemptions to the FLSA.[5]

### 1.   Merrill Lynch Cannot Prove the Outside Sales Exemption Applies By Relying On the Allegations in Plaintiffs' Complaint.

The facts pled in Plaintiffs' Complaint do not establish that Plaintiffs were exempt outside salespeople.  To qualify for the outside sales exemption, the employer must establish that (1) the employee's primary duty is making sales, or obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer; and (2) the employee is customarily and regularly engaged away from the employer's place or places of business.  29 C.F.R. § 541.500.  "The phrase 'customarily and regularly' means greater than occasional but less than constant; it includes work normally done every workweek, but does not include isolated or one-time tasks."  29 C.F.R. § 541.701.  Therefore, in order to qualify for the

---

[5]       In the event that the Court is inclined to grant Defendants' motion, Plaintiffs respectfully request the opportunity to re-plead their claims via an Amended Complaint.

exemption, an employee must spend a significant amount of her work time engaged in sales-related activities away from her employer's place of business.

### a.     Plaintiffs' Primary Duty is Not Making Sales.

The few allegations in Plaintiffs' complaint that Merrill Lynch points to come nowhere close to establishing the outside sales exemption.  Plaintiffs allege that Development Stage Trainees' primary duties include "*inside* sales and customer service."  Compl. ¶ 66 (emphasis added).  As evidence of their inside sales duties, Plaintiffs allege that Development Stage Trainees "engage primarily in lead generation activities," by "calling potential clients and conducting appointments with potential clients to encourage them to do business with Defendants."  *Id.* ¶ 67.  These statements do not even suggest – let alone prove definitively – that the class members are "making sales" within the meaning of the FLSA.

Merrill Lynch contends that these "lead generation" activities are sufficient to establish that Plaintiffs' primary duty was making sales.  *See* Defs.' Br. at 14.  The authorities on which Merrill Lynch relies, however, involve employees who admitted that their primary duty was sales and not, as Plaintiffs allege, performing customer service and lead generation activities. Compl. ¶¶ 66-67; *see Hantz v. Prospect Mortgage, LLC*, 11 F. Supp. 3d 612, 619-20 (E.D. Va. 2014) (at summary judgment stage, concluding that where it was "undisputed that Plaintiff's primary duty was to make sales within the meaning of the [outside sales] exemption," his work meeting with realtors, distributing fliers, networking, and giving seminars did not bar its application); *Taylor v. Waddell & Reed, Inc.*, No. 09 Civ. 2909, 2012 WL 10669, at *3 (S.D. Cal. Jan. 3, 2012) (granting defendant's motion for summary judgment where plaintiffs admitted that their primary duty was sales and alleged that their "job was primarily as a sales person").

In addition, to the extent that promotional work "is incidental to sales made, or to be made, by someone else," that work "is not exempt outside sales work."  29 C.F.R. § 541.503.  Merrill Lynch has not established, as it must, that Plaintiffs' lead generation work was performed in conjunction with Plaintiffs' *own* outside sales work.  *See Slow v. Prestige Merch. Co.*, No. 08 Civ. 4425, 2011 WL 4373516, at *1 (E.D.N.Y. Sept. 19, 2011) (denying defendant's motion for summary judgment on outside sales exemption where plaintiff's "work [wa]s best characterized as promotional activity 'designed to stimulate sales . . . made by someone else'" (alteration in original) (quoting 29 C.F.R. § 541.503)).

> **b.      Plaintiffs Were Not Customarily and Regularly Engaged at Merrill Lynch's Customers' Homes or Places of Business.**

Plaintiffs' allegations they attended "call nights" and "client prospecting functions" in the evenings, Compl. ¶¶ 26, 39, do not prove that they were *customarily* engaged "at the customer's place of business or . . . at the customer's home," as the outside sales exemption requires, 29 C.F.R. § 541.502.  There is no indication in the Complaint that those activities occurred outside the office, or that they occurred with customary frequency, relative to Plaintiffs' inside sales functions of calling and making appointments from the office.  To the contrary, Plaintiffs' allegations make clear that these call night and client prospecting tasks occurred in addition to their primary duties of engaging in inside sales activities.  Compl. ¶ 75.  Merrill Lynch has failed to establish that Plaintiffs were customarily and regularly engaged in outside sales duties, as the exemption requires.  *See Tracy v. NVR, Inc.*, 599 F. Supp. 2d 359, 364 (W.D.N.Y. 2009) (disputes over extent to which plaintiff was engaged away from employer's place of business sufficient to defeat defendants' motion for summary judgment).

2.      **Merrill Lynch Cannot Prove the Administrative Exemption Affirmative Defense Based on the Allegations in Plaintiffs' Complaint.**

In order to prove that Plaintiffs are exempt administrative employees, Merrill Lynch must prove that Development Stage Trainees' primary duty consists of performing office work or non-manual work directly related to the management or the general business operations of the employer or the employer's customers and that their primary duties include the exercise of discretion and independent judgment with respect to matters of significance.  *See* 29 U.S.C.§ 213(a)(1); 29 C.F.R. §§ 541.200-202.

a.      **Plaintiffs' Primary Duty Was Not Directly Related to Assisting with the Running or Servicing of Merrill Lynch's Business.**

To prove its affirmative defense, Merrill Lynch must show that Development Stage Trainees' primary duty is "administrative," not "production" work.  *See Davis v. J.P. Morgan Chase*, 587 F.3d 529, 531-32 (2d Cir. 2009).  Employees perform "administrative" work when their work is directly related to "assisting with the running or servicing of the business."  29 C.F.R. § 541.201(a).  Administrative work is the type that "must be performed no matter what the business produces," including "functions such as management of employees through a human resources department or supervising a business's internal financial activities through the accounting department."  *Davis*, 587 F.3d at 535.[6]

Employees perform "production" work when they are engaged in producing or generating "the good or service that is the primary output of [the] business . . . ."  *Davis*, 587 F.3d at 535.  In other words, if an employee's primary duty "concerns the 'production' of . . . the

_____

[6]      *See also* 29 C.F.R. § 541.201(b) (administrative work includes work in "functional areas such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations, government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities").

20

fundamental service provided by the [defendant]," the employee is not an administrative employee.  *Id.* at 534*; see also Reiseck v. Universal Comm'cns of Miami, Inc.*, 591 F.3d 101, 106 (2d Cir. 2010) (advertising salespersons production workers because "advertising space [wa]s [the defendant]'s 'product'" and their "primary duty. . . was the sale of that product").

Development Stage Trainees fall cleanly on the "production" side of the dichotomy.  As alleged in the Complaint, *see* Compl. ¶¶ 66-67, their primary duty is to learn how to sell Merrill Lynch's financial products by engaging in lead generating activities.  This is non-exempt production work.  *See Dalheim v. KDFW-TV*, 918 F.2d 1220, 1230 (2d Cir. 1990) ("The distinction [the regulation] draws is between those employees whose primary duty is administering the business affairs of the enterprise from those whose primary duty is producing the commodity or commodities, whether goods or services, that the enterprise exists to produce and market.").

### b.    Plaintiffs' Primary Duty Did Not Involve the Exercise of Discretion and Independent Judgment.

The allegations in the Complaint do not establish that Plaintiffs exercised independent judgment and discretion:  in fact, Plaintiffs specifically allege the contrary.  *See* Comp. ¶ 67 (Plaintiffs "exercise little or no independent discretion and judgment in performing their primary duties.").  "[T]he deployment of discretion and judgment is manifested by the 'authority to formulate, affect, interpret, or implement [the employer's] management policies or its operating practices,' by 'involv[ment] in planning [the employer's] long-term or short-term business objectives,' or by the carrying out of major assignments or committing major financial resources in the conduct of the employer's business."  *Pippins v. KPMG, LLP*, 759 F.3d 235, 240-41 (2d Cir. 2014) (second, third, and fourth alterations in original) (quoting *In re Novartis Wage & Hour Litig.*, 611 F.3d 141, 155-56 (2d Cir. 2010), *abrogated on other grounds by Christopher v.*

*SmithKline Beecham Corp.*, 132 S.Ct. 2156 (2012)).  Merrill Lynch can point to nothing in

Plaintiffs' Complaint that would establish that they exercised the kind of discretion necessary to

establish the administrative exemption defense.

Merrill Lynch attempts to argue around this deficiency by claiming that other courts have

found FAs to be exempt, and that therefore, Plaintiffs are exempt.  *See* Defs.' Br. at 17-18.  This

argument fails for several reasons.  First, in the sole case Merrill Lynch cites, the plaintiff "was a

highly trained financial consultant" who managed two hundred client accounts worth between

$25 and $30 million, and the parties did not dispute that he exercised discretion and independent

judgment.  *Hein v. PNC Fin. Servs. Grp., Inc.*, 511 F. Supp. 2d 563, 571 (E.D. Pa. 2007).

Plaintiffs here are trainees, and the administrative exemption "do[es] not apply to employees

training for employment" in an administrative  capacity "who are not actually performing the

duties" of an administrative employee.   29 C.F.R. § 541.705.

Additionally, whether employees exercise sufficient judgment and discretion to meet the

exemption is necessarily fact intensive.  *See* 29 C.F.R. § 541.202 ("The phrase 'discretion and

independent judgment' must be applied in the light of all the facts involved in the particular

employment situation in which the question arises."); *Kadden v. VisuaLex, LLC*, 910 F. Supp. 2d

523, 535 (S.D.N.Y. 2012) ("[A]pplying [the administrative employee] regulation . . . requires a

thorough, fact-intensive analysis of the employee's employment duties and responsibilities."

(alterations in original) (quoting *Schaefer–LaRose v. Eli Lilly & Co.*, 679 F.3d 560, 573 (7th

Cir.2012)).  This analysis cannot be performed based on Plaintiffs' pleadings.

Merrill Lynch relies heavily on a U.S. Department of Labor ("DOL") regulation setting

forth duties that financial services employees must perform in order to qualify for the

administrative exemption. *See* Defs.' Br. at 17. The full text of the applicable regulation

provides:

> Employees in the financial services industry generally meet the duties
> requirements for the administrative exemption if their duties include work such as
> collecting and analyzing information regarding the customer's income, assets,
> investments or debts; determining which financial products best meet the
> customer's needs and financial circumstances; advising the customer regarding
> the advantages and disadvantages of different financial products; and marketing,
> servicing or promoting the employer's financial products. However, an employee
> whose primary duty is selling financial products does not qualify for the
> administrative exemption.

29 C.F.R. § 541.203(b).

However, elsewhere in its papers Merrill Lynch argues that Plaintiffs' primary duty *was*

*selling financial products*, which alone would be sufficient to disqualify them from the

administrative exemption. *See* Defs.' Br. at 14. Merrill Lynch cannot have it both ways. *Wong*

*v. HSBC Mortgage Corp. (USA)*, No. 07 Civ. 2446, 2008 WL 753889, at *7 (N.D. Cal. Mar. 19,

2008) (granting summary judgment to plaintiffs on administrative exemption defense where

defendant conceded plaintiffs' primary duty was selling financial products).

In addition, Plaintiffs have not alleged that their primary duties involved any of the duties

listed in the regulation. Merrill Lynch relies instead on its contention that Plaintiffs were

FINRA-registered representatives during the time they were Development-Stage Trainees. *See*

Defs.' Br. at 17. The fact that Plaintiffs may have held FINRA registration during the applicable

time period does not establish that they are exempt, and the single DOL Opinion Letter Merrill

Lynch cites does not hold to the contrary. Rather, it holds that registered representatives whose

duties "include evaluating the client's individual financial circumstances and investment needs

and assessing and comparing the alternatives before making recommendations for investment

options to the client" are likely to satisfy the discretion and independent judgment prong of the

administrative exemption – a determination that cannot be made at this pleading stage.  *See* DOL Opinion Letter FLSA2006-43 (Nov. 27, 2006), at 6; *Dejesus*, 2012 WL 5289571, at *2 (exemption is "fact-intensive and inappropriate for resolution at the motion to dismiss stage").

### C.   Plaintiffs' Complaint Properly Alleges Willfulness.

Merrill Lynch also argues that Plaintiffs failed to allege with specificity that Defendants' unlawful actions were "willful."  The statute of limitations under the FLSA is ordinarily two years, but it may be extended to three years if the claim arises from a "willful" violation.  29 U.S.C. § 255(a).  The willfulness requirement may be satisfied if the employer either acted knowingly or "showed reckless disregard for the matter of whether its conduct was prohibited by the statute."  *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).

Plaintiffs allege that Merrill Lynch's acts were "willful," pursuant to a "centralized, company-wide policy" that "classified all of their Development Stage Trainees as exempt" and that they failed to "perform a person-by-person analysis of each Development Stage Trainee's job duties in making their decision to classify all of their Development Stage Trainees as exempt from federal overtime protection."  *See* Compl. ¶¶ 69-70, 89.  These allegations are sufficient to plead a willful violation of the FLSA.  *See McLaughlin*, 486 U.S. at 133; *Moran v. GTL Const., LLC*, No. 06 Civ. 168, 2007 WL 2142343, at *4 (S.D.N.Y. July 24, 2007) (allegations that defendant's actions were willful and intentional "satisfies the requirements of pleading a willful violation of the FLSA").

Moreover, "whether a defendant's actions were willful is a factual question that cannot be decided on a motion to dismiss."  *Moran*, 2007 WL 2142343, at *4.  Plaintiffs are entitled to take discovery to determine Merrill Lynch's state of mind with regard to the exempt classification of the Development Stage Trainee position.  *See Damassia v. Duane Reade, Inc.*, No. 04 Civ. 8819,

2005 WL 1214337, at *2-3 (S.D.N.Y. May 20, 2005).  Merrill Lynch's motion should therefore be denied on this basis as well.

**IV.     Merrill Lynch Has Not Made a Case for a Stay.**

Merrill Lynch makes a halfhearted attempt to stall Plaintiffs' suit by throwing in a footnote that "[i]n the alterative, this case may be stayed pending the final adjudication of *Litty*, or transferred to the Central District of California."  Defs.' Br. at 11.  This dual request should be rejected.

"The party moving for a stay 'must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else.'" *Authors Guild, Inc. v. Dialog Corp. (In re Literary Works in Elec. Databases Copyright Litig.*), No. 00 Civ. 6049, 2001 WL 204212, at *2 (S.D.N.Y. Mar. 1, 2001) (quoting *Landis v. N. Am. Co.,* 299 U.S. 248, 255 (1936)).  Defendants "ha[ve] made no argument as to why a stay should be granted in this case, much less made out [a] clear case of hardship or inequity."  *Pippins*, 2011 WL 1143010, at *6 (internal quotation marks omitted). The request for stay should therefore be denied.[7]

## CONCLUSION

For the foregoing reasons, this Court should deny Defendants' motion to dismiss, stay, or transfer Plaintiff's complaint in its entirety.

---

[7]     If Merrill Lynch seriously believes that transfer away from its home jurisdiction to a district where an individual single-plaintiff case brought on behalf of a different population of employees is proceeding, Merrill Lynch can bring a properly noticed motion to that effect.

Respectfully submitted,

Dated: New York, New York
      April 15, 2015

By:   /s/Justin M. Swartz      
    Justin M. Swartz

**OUTTEN & GOLDEN LLP**
Justin M. Swartz
Rachel Bien
Juno Turner
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone: (212) 245-1000
Facsimile:  (646) 509-2060

Jahan C. Sagafi (*pro hac vice* application
    forthcoming)
Katrina L. Eiland (*pro hac vice* application
    forthcoming)
1 Embarcadero Center, 38th Floor
San Francisco, CA 94111
Telephone: (415) 638-8800
Facsimile:  (347) 390-2187

**SHAVITZ LAW GROUP, P.A.**
Gregg I. Shavitz (*pro hac vice* application
    forthcoming)
Paolo C. Meireles
1515 South Federal Highway, Suite 404
Boca Raton, FL 33432
Telephone: (561) 447-8888
Facsimile:  (561) 447-8831

*Attorneys for Plaintiffs*

26